JOHN D. MACLEAN & another[1] *vs.* STEPHEN R. DELINSKY
& others.[2]

Suffolk. April 2, 1990. - July 9, 1990.

Present: WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Electronic Surveillance. Privacy. Massachusetts Tort Claims Act.*

Where no genuine question of material fact existed with respect to whether the defendants, agents of the Commonwealth, proceeded with electronic surveillance of the plaintiff with reasonable suspicion that such surveillance would yield evidence of corruption, summary judgment was properly entered for the defendants on the plaintiffs' claims under the Massachusetts Tort Claims Act, G. L. c. 258, and the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, for injuries based on violation of the wiretap statute, G. L. c. 272, § 99, and the invasion of privacy statute, G. L. c. 214, § 1B. [874-878]

CIVIL ACTION commenced in the Superior Court Department on June 20, 1985.

The case was heard by *James J. Nixon,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*John F. Mee* (*Marshall E. Johnson* with him) for the plaintiffs.

*Roberta T. Brown,* Special Assistant Attorney General, for the Commonwealth.

---

[1]Joan M. MacLean.

[2]Frederick W. Riley, Michael J. Norton, Francis McGovern, William P. Lennon, George N. Anderson, Richard H. Thompson, special administrator of the estate of Stanley J. Barczak, and the Commonwealth. After this case was entered in this court, Stanley J. Barczak, an original defendant, died, and we allowed a motion to substitute the special administrator as a defendant.

*Marshall Simonds*, Special Assistant Attorney General (*Michael J. Tuteur*, Special Assistant Attorney General, with him) for Frederick W. Riley.

*Jack I. Zalkind, Lawrence F. O'Donnell*, Special Assistant Attorney General, *Harry L. Manion, III, Earle C. Cooley*, & *Leo J. Cushing* for Stephen R. Delinsky & others, joined in a brief.

O'CONNOR, J. This action was commenced by the filing of a complaint alleging that the plaintiff John D. MacLean (MacLean) sustained severely disabling emotional injury and, as a consequence, the plaintiff Joan M. MacLean sustained loss of consortium, as a result of the conduct of the seven individual defendants. The case against the Commonwealth is based on the alleged negligence of the defendants Delinsky and Riley, assistant attorneys general, in connection with their authorization of electronic interception of MacLean's conversations, and is brought under G. L. c. 258 (1988 ed.), the Massachusetts Tort Claims Act. The case against the individual defendants presents several claims. The plaintiffs allege that MacLean's injuries resulted from the electronic surveillance of his conversations, in which surveillance all the defendants allegedly participated, in violation both of the Commonwealth's wiretap statute, G. L. c. 272, § 99 (1988 ed.), and its invasion of privacy statute, G. L. c. 214, § 1B (1988 ed.). The plaintiffs also allege against the individual defendants that MacLean's injuries were caused by his having been interrogated following the electronic surveillance and that that interrogation violated his rights under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I (1988 ed.). In addition, both the electronic surveillance and the interrogation were alleged to be grounds for a right of recovery on the common law tort theory of intentional infliction of emotional distress.

The defendants moved for summary judgment, and a judge of the Superior Court granted summary judgment for the defendant Barczak on MacLean's claims for violation of G. L. c. 12, § 11I, and G. L. c. 214, § 1B, and summary judgment for the other seven defendants on all counts

(MacLean's and Joan MacLean's claims).[3] After the entry of final judgment, the plaintiffs appealed. We granted their application for direct appellate review, and now affirm.

In support of their motions for summary judgment, the defendants submitted affidavits of the defendants Delinsky, Riley, and Norton, and of Thomas R. Kiley, then first assistant attorney general. They also submitted excerpts and exhibits from a deposition given by MacLean. A fair summary of the relevant facts set forth in those materials is as follows. Barczak was a tax examiner in the Department of Revenue. On June 24, 1982, he was arrested after receiving a bribery payment from a delinquent taxpayer. Barczak informed the defendant Delinsky, who was then an assistant attorney general and the chief of the Attorney General's criminal bureau, and the defendant Riley, who also was an assistant attorney general and was the chief of criminal investigation, that a number of department employees were involved in a scheme to "shake down" delinquent taxpayers. According to the affidavits, that information tended to confirm other information previously received by the Attorney General's office. Barczak agreed to cooperate with an investigation that would be headed by Delinsky and Riley.

Barczak was placed in voluntary protective custody, which was performed by Massachusetts State troopers assigned to the State police unit of the Attorney General's office. MacLean, a State trooper, was assigned to guard Barczak on Saturday, June 26, 1982, from midnight to 8 A.M. and from 4 P.M. to the following midnight. He was directed to report to Barczak's house in Lawrence. Upon MacLean's arrival, the trooper whom he relieved introduced MacLean to Barczak and his wife and, with Barczak's consent, gave MacLean a device for recording calls on Barczak's telephone. MacLean then spent the night sitting in his cruiser in the driveway of Barczak's house.

---

[3]The parties assume, as did the motion judge, that Barczak moved for summary judgment. We make the same assumption, although no such motion has been reproduced in the record appendix nor do the docket entries show the filing of such a motion.

During the 4 P.M. to midnight shift, Barczak approached MacLean's cruiser, which was parked in front of Barczak's house, and asked MacLean whether they could take a ride. MacLean agreed to do so, and Barczak and MacLean went to a restaurant in Salem, New Hampshire. Later in the evening, they visited two bars in Massachusetts where they drank beer and talked. On Monday morning, June 28, a newspaper article revealed that a Department of Revenue employee had been arrested for accepting a bribe and was cooperating with the office of the Attorney General. Delinsky and Riley feared that the publicity would interfere with their investigation, and their fears increased when Barczak told them that he no longer wanted to cooperate with the investigation because one of their own people was trying to "reach" him.

On June 28, Barczak told Riley about his Saturday evening with MacLean. Barczak told Riley that MacLean had said to Barczak: "If a dark cloud comes over your head, give me a call. We have a lot of money and good attorneys." According to Barczak, MacLean wrote the headquarters telephone number on a napkin and gave it to Barczak. Barczak gave the napkin to Riley.

On June 29, Barczak had an appointment with an attorney. MacLean was assigned to escort Barczak to that meeting. Later that day, Barczak told Riley that, on the way back from the attorney's office, Barczak had asked MacLean whether he remembered their earlier conversation in which MacLean offered his help. MacLean said that he did. Barczak then asked MacLean whether the telephone number MacLean had given him was MacLean's home telephone number. MacLean said "no," and gave Barczak his home number written on an envelope. Barczak gave the envelope to Riley. Also, in his conversation with Riley on June 29, Barczak told Riley that, on the evening of June 28, as Barczak was taking rubbish to the rear of his house, he was startled by an unidentified man, who was positioned so that he could not be observed by the trooper guarding Barczak. The man, according to Barczak's statement to Riley, said,

"Hi, Stan . . . [w]e want you to keep quiet. Don't say anything. We'll keep in touch with you." The man then left.

On June 30, Barczak reported to the Attorney General's office that he was again confronted by a second unidentified man who told him that, if he followed "our" instructions, and did not say anything, "we've got $250,000" and lawyers and would be in touch with him.

Riley passed on to Delinsky any of Barczak's reports that had not been made directly to Delinsky.

MacLean's assignment to the State police unit of the Attorney General's office terminated on June 30, 1982. MacLean said nothing to Delinsky or Riley about his trips with Barczak or the conversations that, according to Barczak's reports, had taken place between him and Barczak.

Delinsky and Riley decided to investigate MacLean. They instructed Barczak to telephone MacLean at his home on July 1 to arrange a meeting, and to record the telephone conversation electronically. Barczak agreed. The defendant Lieutenant Norton of the State police unit of the Attorney General's office was called in to assist in the technical preparations for the recording of the telephone call. On July 1, Barczak called MacLean and they agreed to meet in front of the New England Aquarium the next day. Both the telephone call and the subsequent meeting at the aquarium were electronically recorded with Barczak's consent but without a warrant. Pursuant to Delinsky and Riley's request, Norton assigned the defendants Staff Sergeant Francis McGovern, Lieutenant William P. Lennon, and Sergeant George Anderson to do undercover surveillance with him of the July 2 meeting. MacLean did not tell Delinsky, Riley, or Norton about the telephone call or the scheduled meeting.

Barczak went to the July 2 meeting wearing a concealed electronic device that recorded but did not transmit. There, the defendant troopers conducted visual, but not audio, surveillance. Trooper Charles Eastman drove with MacLean to the scheduled meeting with Barczak. Eastman remained in the vehicle while MacLean and Barczak talked in front of

the aquarium for about thirty minutes. Eastman noticed that the meeting was being observed, and he informed MacLean, who then searched Barczak and found the recording device.

Later that same day, MacLean and Eastman were questioned at the Attorney General's office by Delinsky, Riley, and Norton. Subsequently, MacLean sought treatment with the State police stress unit. He remained out of work until December 21, 1983. No criminal charge was ever filed nor disciplinary action taken against MacLean.

A motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [rule 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). See *LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989), and cases cited.

This case presents several theories of recovery asserted against eight defendants whose participation in the significant events varied. The plaintiffs' theories of recovery, as pleaded, raise numerous questions of common and statutory law, including the law of immunity as it may apply to the individual defendant employees of the Commonwealth. Our only task, however, is to address the arguments made on appeal. A fair summary and overview of those arguments is provided in the "Conclusion" section of the plaintiffs' brief, which we quote in substantial part as follows: "The Trial Court assumed, without finding as a fact, that Stanley Barczak told Delinsky and Riley of his various trips and conversations with John MacLean including the so-called 'Dark Cloud' conversation, and that the suspicion allegedly gener-

ated by this conversation in Delinsky and Riley was reasonable. The existence of the so-called 'Dark Cloud' conversation; the alleged recounting of it by Barczak to Delinsky and Riley; and the reasonableness of the suspicions of Delinsky and Riley have all been shown to be in dispute. Since as the Trial Court correctly suggests, these are important factors which bear on the reasonableness of the actions of Delinsky and Riley in instituting the electronic surveillance of John MacLean, it is beyond dispute that these are facts which are material to the outcome of this case. The determination of the propriety of the actions of the appellees, the applicability of the principle of prosecutorial immunity and all of the remaining issues in this case flow from these simple yet deceptively equivocal facts. Put in its most basic form, if Barczak's infamous 'Dark Cloud' conversation with John MacLean, his recounting of it to Delinsky and Riley and the reasonableness of their suspicions of John MacLean are all uncontroverted, then summary judgment would appear to be appropriate; if they remain in dispute, then summary judgment was improperly entered." (Citations omitted.)

It is clear that nothing significant to the plaintiffs' argument on appeal turns on the question whether MacLean in fact said to Barczak, "If a dark cloud comes over your head, give me a call. We have a lot of money and good attorneys." Rather, a full reading of the plaintiffs' brief discloses that all the plaintiffs' claims against the individual defendants depend on the plaintiffs' establishing that Barczak did not tell Riley, and therefore Riley did not tell Delinsky, about Barczak's trips and conversations with MacLean. The question which the plaintiffs assert is critical to their case and is in dispute is whether Delinsky and Riley's suspicion — that electronic surveillance of conversations between Barczak and MacLean would lead to the discovery of evidence of criminality — was reasonable. The reasonableness of that suspicion did not depend on whether MacLean actually ate and drank with Barczak or on what MacLean actually said to Barczak, but instead, according to the thrust of the plaintiffs'

argument, on what Barczak told Riley (and then Riley told Delinsky) MacLean had done and said.

The key to the plaintiffs' attack on the summary judgment is their contention that the question whether Barczak told Riley that MacLean and he had taken trips and had had conversations, including MacLean's "dark cloud" statement, remains a matter of dispute. The motion judge concluded from the materials provided to him that that matter was not in dispute, and we agree. There was nothing in the materials presented to the judge that would cast doubt on the assertions in the affidavits presented by the defendants that Barczak had made the representations to Riley that are recounted above, and that Riley had repeated them to Delinsky. There is nothing to suggest that the plaintiffs would be able to produce conflicting evidence through direct or cross-examination. The plaintiffs' bald assertions that these matters are still in dispute are not enough to prevent summary judgment.

Because we reject the plaintiffs' argument that a genuine question exists as to whether Riley and Delinsky were informed by Barczak of Barczak's social trips and conversations with MacLean, we shall address the plaintiffs' arguments with respect to specific claims against specific defendants only briefly. It is enough for us to observe that all those arguments are premised on the contention, which we reject, that a genuine question of fact with respect to Barczak's disclosures to Riley remains to be litigated. For example, taking the plaintiffs at their word, only if that question were still open could the plaintiffs be in a position to prove at trial that Delinsky and Riley proceeded with electronic surveillance without any reasonable suspicion that such surveillance would yield evidence of corruption. The plaintiffs concede that only if Delinsky and Riley proceeded without such a reasonable suspicion could the plaintiffs prove that Delinsky and Riley violated the Massachusetts wiretap and invasion of privacy statutes, G. L. c. 272, § 99, and G. L. c. 214, § 1B. Stated differently, the plaintiffs do not

dispute that Delinsky and Riley's reasonable suspicion would insulate them from liability on those claims.

Moreover, although the plaintiffs argue that the State trooper defendants, Norton, McGovern, Lennon, and Anderson, ought not enjoy absolute immunity for acts performed by them in the course of their official duties, the plaintiffs do not offer a theory of recovery against those defendants or Barczak that would survive the uncontradicted affidavits' establishment of the facts that those defendants were carrying out requests and orders of Delinsky and Riley, and that Delinsky and Riley were motivated by a reasonable suspicion that the surveillance would be fruitful.[4]

The plaintiffs' claims based on the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, fare no better. Interference with the "exercise or enjoyment . . . of rights secured by the constitution or laws" of the Commonwealth or the United States is a prerequisite to recovery under that statute. The plaintiffs properly do not argue that, even if the interview of MacLean conducted by Delinsky, Riley, and Norton was motivated by Delinsky and Riley's reasonable suspicion, as the materials in support of the summary judgment motions establish, the interview somehow violated one or more of MacLean's constitutional or statutory rights. The plaintiffs' claims, as they have argued them, depend on their being able to prove that the inquiry was unjustified by reasonable suspicion.

Lastly, with respect to the individual defendants, we comment on the plaintiffs' contention that the judge granted summary judgment for them on the intentional infliction of emotional distress claim "without making any findings whatsoever, apparently relying on the implicit assumption that, if a cause of action were made out on this count, it would be barred by the doctrine of prosecutorial immunity. . . . [F]or reasons previously illustrated, the Trial Court's grant of sum-

---

[4]Barczak did not appeal the partial denial of his motion for summary judgment.

mary judgment was improper and must be reversed."[5] We understand the plaintiffs' argument to be that, because the reasonableness of Delinsky and Riley's suspicion has not been established, the defendants' immunity from liability also has not been established. The argument fails because we are satisfied that the reasonableness of the suspicion has been established for summary judgment purposes.

We turn briefly to the claim against the Commonwealth based on the Massachusetts Tort Claims Act, G. L. c. 258. To dispose of this claim, it is sufficient to note the plaintiffs' concession, set forth above, that the capacity of all the plaintiffs' claims, including this claim against the Commonwealth, to survive the defendants' motion for summary judgment depends on the vitality of the question whether Barczak told Riley, and Riley told Delinsky, about Barczak and MacLean's trips and conversations. If that question is not still open, as we have concluded it is not, the plaintiffs' claim against the Commonwealth is foreclosed.[6]

We have concluded that the judge correctly ordered partial summary judgment for Barczak and summary judgment for all the other defendants. It follows that the summary judgment entered in the Superior Court as to Joan MacLean's claims for loss of consortium was also correct. See *Shaw* v. *Boston Am. League Baseball Co.*, 325 Mass. 419, 424 (1950).

*Judgment affirmed.*

---

[5]We think it is worth mentioning that a judge does not properly "make findings" in connection with a summary judgment proceeding (nor did the judge in this case purport to do so), but only declares as a matter of law the material facts that are established by the uncontroverted materials submitted in support of, or in opposition to, the motion.

[6]In any event, G. L. c. 258, § 10 (*c*), makes §§ 1-8 of that chapter inapplicable to claims arising out of intentional torts. The complaint alleges only intentional torts and therefore G. L. c. 258 does not help the plaintiffs.