G.S. ENTERPRISES, INC. *vs*. FALMOUTH MARINE, INC.

Norfolk. April 1, 1991. - May 23, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Unlawful Interference. Practice, Civil,* Discovery, Summary judgment. *Evidence.* Privileged information. *Privileged Communication.*

In the circumstances of a civil action, the defendant's waiver of the attorney-client privilege and proffer of documents and materials with respect to an advice-of-counsel defense was not so late as to prejudice the plaintiff or to preclude the judge from relying on the materials supporting the defense to decide a motion for summary judgment. [269-272]

In an action for intentional interference with contractual relations and violation of G. L. c. 93A, the judge incorrectly ordered summary judgment for the defendant where genuine disputes remained for resolution by a jury with respect to the defendant's motive in filing a lawsuit against the plaintiff that interfered with the plaintiff's performance of a contract with a third party [272-275], where material facts remained for resolution with respect to the elements of good faith and full disclosure in the advice-of-counsel defense on which the defendant relied [275-276], and where a question of fact remained whether the plaintiff had sustained damages due to the defendant's actions [276-277].

CIVIL ACTION commenced in the Superior Court Department on May 6, 1987.

The case was heard by *Roger J. Donahue*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Loyd M. Starrett* (*Matthew D. Baxter* with him) for the plaintiff.

*Thomas E. Peisch* (*Robert R. Pierce* with him) for the defendant.

GREANEY, J. A judge of the Superior Court allowed the motion of the defendant, Falmouth Marine, Inc. (FMI), for

summary judgment as to the two counts in the complaint. The judge concluded that the plaintiff, G.S. Enterprises, Inc. (GSEI), had failed to make a showing in support of its claims of intentional interference with contractual relations and violations of G. L. c. 93A (1988 ed.), claims based on FMI's alleged improper interference with GSEI's contract with a third party. GSEI appealed, and we transferred the case to this court on our own motion. We now reverse.

We summarize the facts in the light most favorable to GSEI, taking all the facts set forth in its supporting affidavits as true. See *Graham* v. *Quincy Food Serv. Employees Ass'n & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 603 (1990). See also *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). FMI is a boat yard located on Falmouth Harbor. In 1985, FMI became interested in purchasing another boat yard, MacDougalls' Cape Cod Marine Service, Inc. (MacDougalls'), that was located on the other side of the harbor. FMI's principals wanted to purchase MacDougalls' in order to "protect" it from a local condominium developer who, it was rumored, was interested in buying MacDougalls'. In July, 1985, FMI principals met with an executive of Ferranti Ocean Research Equipment, Inc. (FOREI), the parent company of MacDougalls'. There was a discussion about the sale of the property, but no offers were made.

In August, 1985, a representative of FOREI met with representatives of FMI and a group of FOREI management personnel (inside management group) who had an informal oral right of first refusal to purchase MacDougalls'. Further discussions about the sale of MacDougalls' took place, and the president of FMI presented a written offer to purchase the assets of MacDougalls' for the net value of the assets plus $500,000. In response, the FOREI representative "made it clear to Falmouth Marine that I was not at that time authorised to complete any deal with regard to the sale of [MacDougalls']." Several issues of importance to the sale were discussed but not resolved, including the costs of envi-

ronmental studies and investigations and liability for any hazardous waste on the MacDougalls' premises. FMI's offer was not accepted at this meeting, and the president of FMI admitted that neither he nor (to his knowledge) any other officer or director of FMI believed at that time that FMI had a contract with FOREI.

Two days after this meeting, FOREI's representative delivered to the president and treasurer of FMI a written response to the FMI purchase offer. In pertinent part, this response provided:

> "I am . . . able to make a qualified and provisional response to your offer, although I think you understand that this is not binding on [FOREI] until such time as a contract has been prepared, approved by the [FOREI] Board and signed on their behalf by an officer of the company. . . .
> [W]e would wish to sell you the stock of [MacDougalls'] rather than the assets . . . . Subject to these observations, I am authorized by the Chief Executive of the [FOREI] Group to give provisional acceptance to your offer which I shall transmit through our normal procedures to the [FOREI] Main Board with a recommendation that it be approved."

Both the FOREI representative who delivered this letter and the FMI treasurer agreed that, on delivery of the letter, there was no specific discussion of the terms of the FMI offer. The president of FMI, however, took the position that there had been a "line by line, item by item" discussion of FMI's offer. In any event, at the conclusion of this meeting, the parties understood that a detailed purchase and sale agreement would have to be prepared, and that final consummation of the sale depended on the approval of the FOREI board.

During August and into September, 1985, FMI's principals heard that the inside management group at MacDougalls' was still trying to purchase the property. On September 6, 1985, FOREI's representative wrote to FMI and

stated that the inside management group had just made another proposal and that this proposal would be recommended to the FOREI board. The representative also stated in the letter that FOREI's counsel had been instructed to terminate negotiations with FMI and to commence negotiations with the inside management group.

The president of FMI responded to FOREI by letter several days later. He stated that he was disappointed that FMI's offer would not be presented to the FOREI board, and he made clear that the offer remained open if the inside management group did not complete the purchase. The FMI president also stated that FMI was prepared to enhance its original offer by pledging to FOREI a substantial percentage of any profit that might be realized from the resale of the property, and by adding a balloon cash payment to FOREI.

At roughly the same time as these events, James L. Gesner, a local condominium developer (apparently not the one who FMI originally was concerned would purchase MacDougalls'), learned that MacDougalls' might be for sale. He made some inquiries of the FOREI representative with whom FMI had been dealing, and he was told that no contract for the sale of MacDougalls' had been made, and that he should submit a $250,000 deposit to FOREI's counsel if he wished to bid on the property. Soon thereafter, negotiations between Gesner and FOREI began. Gesner subsequently joined forces with James M. Salah, a contractor, and the two formed the plaintiff corporation, GSEI.

On September 16, FMI submitted to FOREI a "Revised Offer to Purchase" that included a cash payment beyond net asset value of $800,000 ($300,000 higher than that originally offered), assurances regarding the continued employment of MacDougalls' employees, and a promise to share with FOREI a percentage of profits realized on any resale of the property for use other than as a boat yard. Several days after this revised offer was submitted, FMI's president learned from counsel that its offer had not been accepted. Assuming that the inside management group had succeeded in purchasing the property, FMI's president contacted an individual

whom he knew to be a part of that group and congratulated him. He was told, however, that the inside management group's offer had been rejected, and that Gesner had purchased the property. Within days of this conversation, the treasurer of FMI contacted FOREI's representative, who confirmed that FOREI was dealing with Gesner. FMI's treasurer became upset, and said, "You'll be sorry for this!"

In its edition dated September 20, 21, and 22, a Falmouth newspaper, The Enterprise, confirmed in an article that Gesner, a condominium developer, and Salah, a contractor, had purchased MacDougalls', and stated that there were reports that Gesner intended to build waterfront condominiums on the site. Both the president and treasurer of FMI saw this article. Consultation between FMI and its counsel began on September 23.[1]

On September 26, after consultation with counsel, FMI commenced an action in the Superior Court against FOREI, MacDougalls', and the FOREI representative with whom FMI had dealt. FMI alleged that the correspondence between it and FOREI's representative in July and August of 1985 constituted an enforceable agreement, and prayed for specific performance, injunctive relief, and damages. FMI also recorded a lis pendens covering the MacDougalls' property.

On September 30, the principals of GSEI were ready with payment in hand to close the sale of MacDougalls' with FOREI. They learned, however, that FMI had recently filed suit against FOREI, MacDougalls', and FOREI's representative. Therefore, the closing was postponed and GSEI and FOREI entered into the first of a series of extension agreements.

In November, FMI's complaint was ordered dismissed as to all three defendants pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim upon

---

[1]FMI's counsel submitted affidavits stating that meetings with FMI in fact began "on or about" September 19. However, dated records of FMI's counsel contradict these statements.

which relief could be granted. There was no request made to amend the complaint. The lis pendens also was ordered dissolved, but FMI took no immediate action to record the order of dissolution. FMI appealed from the judgment of dismissal and separately from the order dissolving the lis pendens.

While these appeals were pending, in February, 1986, counsel for FOREI notified counsel for GSEI in writing that FOREI would enter into no further extension agreements beyond February 19. Counsel for GSEI responded in essence that, because of the pendency of the FMI lawsuit, FOREI could not comply with certain terms of the purchase and sale agreement, including those relating to pending claims and litigation and material adverse changes in the business of MacDougalls'. Therefore, counsel for GSEI stated, GSEI was willing to enter into another extension agreement, and also was willing to perform if FOREI would agree to a price modification or an escrow arrangement, but GSEI would not close on February 19 under the existing conditions. On February 28, 1986, FMI finally recorded the dissolution of the lis pendens.

FOREI subsequently sold MacDougalls' to another group with which (apparently) it had not previously negotiated. After that sale was closed, FMI, in an April 10, 1986 letter signed by its president, vice president, and treasurer, made contact with the new ownership of MacDougalls' and stated, in part, as follows:

> "Your recent purchase of MacDougall[s'] . . . came to us as welcome news. Our fear that Falmouth might soon lose a fine yacht yard to the developer's bull dozer was the motivating factor behind our original approach to [FOREI] with an interest in buying. We are thankful that MacDougall[s'] will continue to serve the yachting public."

In July, 1986, the Appeals Court affirmed the dismissal of FMI's action by unpublished memorandum pursuant to its Rule 1:28. 22 Mass. App. Ct. 1111 (1986).

These basic facts were before the motion judge in the form of responses to interrogatories, depositions, affidavits, and letters. After a hearing on the motion, the judge issued a memorandum in which he ruled in pertinent part as follows:

> "A purchase and sale agreement[2] was submitted by FMI to [FOREI] for its acceptance. It was conditionally 'accepted' [in] September . . . 1985 . . . . [GSEI then] made an offer to [FOREI] for the purchase of the MacDougall property and the offer was accepted. . . . FMI decided to sue [FOREI] for specific performance of what [it] regarded as a binding contract. FMI discussed . . . such a suit with competent counsel . . . and such a suit was brought . . . and a *lis pendens* was recorded. . . . Subsequently . . . [FOREI's] motion[s] to dismiss [and] to dissolve the lis pendens [were] allowed . . . . [On appeal,] the Appeals Court decided . . . that there was no binding agreement between FMI and [FOREI] to be enforced. . . . When [GSEI] had its fourth extension to finalize its [purchase and sale] agreement with [FOREI], . . . FMI had its case dismissed in the Superior Court, and the lis pendens on the property . . . had been dissolved. There was really no reason at that time why [GSEI] could not have . . . bought the MacDougall property. There was no evidence at the summary judgment hearing that [FMI] induced [FOREI] to discontinue its contractual relations with [GSEI]. As a matter of fact [GSEI] had a contract with [FOREI] and let it lapse by failing to obtain a further extension. . . . I *find and rule* that there is no evidence presented . . . to show that . . . FMI used any improper means or methods to interfere with the con-

---

[2]There was no purchase and sale agreement. Counsel for FMI conceded at oral argument that this reference was plainly wrong.

tractual relations of [GSEI]. I further *find and rule . . .* that [GSEI's] claim under c. 93A, § 11, does not stand by itself. . . . Wherefore, [FMI's] motion for summary judgment [is allowed] on all counts." (Emphasis in original.)

1. *Delayed discovery.* We summarize the facts relevant to an issue of delayed discovery raised by GSEI. GSEI commenced its action against FMI in May, 1987. FMI answered in July, and GSEI made its first discovery requests in August. In particular, GSEI sought information regarding the circumstances surrounding FMI's decision to sue FOREI and its decision to appeal from the adverse judgment. Asserting both the attorney-client privilege and the attorney work product doctrine, FMI refused to comply with or respond to most of GSEI's requests. GSEI sought to compel discovery of this information, but FMI successfully opposed this motion.

Discovery concluded in March, 1988. Roughly four months later, FMI first moved for summary judgment, and for the first time raised the advice-of-counsel defense. GSEI asked the judge to rule that FMI was estopped from relying on the defense, because it had not permitted complete discovery. The motion judge denied FMI's motion, and referred GSEI's request to the trial judge, but he indicated that he considered it unfair of FMI to raise the advice-of-counsel defense while simultaneously denying GSEI discovery of the facts related to the defense.

In September, 1989, FMI finally notified GSEI in writing that GSEI was welcome to conduct additional discovery concerning privileged communications relevant to the advice-of-counsel defense, and promised to forward relevant documents to GSEI. FMI did not soon thereafter act on this promise, but GSEI apparently made no effort to follow up on it.

Four months later, in January, 1990, FMI announced that it was retaining new counsel, as it intended to rely on the advice-of-counsel defense and the testimony of its former counsel. FMI's successor counsel notified GSEI that it was free to depose its predecessors relative to the advice-of-coun-

sel defense, but GSEI made no effort to do so. Later that month and again in February, FMI's successor counsel tried to deliver to counsel for GSEI documents, supplemental answers to interrogatories, and supplemental admissions concerning the advice-of-counsel defense. GSEI consistently refused to accept or examine this information.

The case was called for trial on February 12, 1990. At that time, GSEI filed a motion in limine requesting an order excluding evidence of communications between FMI and its counsel. The judge sua sponte scheduled reargument of the summary judgment motion. Prior to the argument, FMI submitted a renewed summary judgment motion, in which it relied in part on the advice-of-counsel defense. In support of its motion, FMI submitted affidavits of FMI's predecessor counsel and FMI principals to the effect that, after careful consultation, FMI had been advised by counsel to commence the suit against FOREI.

In his memorandum on FMI's motion for summary judgment, the judge did not expressly rely on the advice-of-counsel defense. However, the judge did rely on statements contained in the affidavits submitted by FMI, and he did refer to the fact that FMI principals had conferred with counsel before FMI filed its suit.

GSEI now argues that the judge erred in relying on the affidavits supporting FMI's advice-of-counsel defense, because FMI unfairly and prejudicially withheld that information from GSEI. FMI contends in response that GSEI had ample notice of the advice-of-counsel defense, and more than sufficient opportunity to conduct discovery, and that the judge therefore did not abuse his discretion by relying on the affidavits.

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Mass. R. Civ. P. 26 (b) (1), 365 Mass. 772 (1974). Under this rule, a party may resist discovery on the basis of privilege, but may not at the same time

rely on the privileged communications or information as evidence at trial. Conversely, a party may waive the privilege and then offer the communications or information as evidence. These are mutually exclusive courses of action, and if the latter is chosen, the party waiving the privilege generally should do so before he raises it as a bar to discovery, so as to allow his adversary sufficient time within which to discover the communications and information. A waiver on the virtual eve of trial is insufficient and, depending on the circumstances, may justify an order barring the use of the privileged evidence. See *Aysseh* v. *Lawn*, 186 N.J. Super. 218, 230-232 (1982). See also *Kammerer* v. *Western Gear Corp.*, 96 Wash. 2d 416, 420 (1981); *Phipps* v. *Sasser*, 74 Wash. 2d 439, 446-447 (1968).

In this case, FMI came dangerously close to denying GSEI a fair opportunity to discover information concerning the circumstances relevant to FMI's advice-of-counsel defense. FMI did not waive the attorney-client privilege and allow discovery until the formal discovery period had elapsed and more than one year after the judge who first considered the summary judgment motion suggested that FMI was unfairly withholding discovery relevant to the advice-of-counsel defense. FMI should have evaluated its position, settled on its defense, and decided whether to waive its privilege during the discovery period, before it raised the privilege as a bar to GSEI's efforts at discovery.

On the other hand, looking at the totality of the circumstances, we cannot say that GSEI was prejudiced by FMI's intransigence. GSEI had over four months from the time that FMI first indicated that it was waiving the attorney-client privilege until the time the case was called for trial to depose FMI's predecessor counsel and conduct other discovery. An additional month passed while the summary judgment argument date approached. During this period, GSEI refused to accept documents and materials related to the defense that were proffered by FMI's successor counsel. GSEI should have been able to meet its discovery needs in over four months and with the materials offered by FMI. Had

GSEI tried unsuccessfully to do so, it could have requested the opportunity for supplemental discovery. See Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974). As FMI now admits, it could hardly have opposed such a request.

In view of these circumstances, we conclude that FMI's waiver of the attorney-client privilege was not too late to preclude reliance on the defense before the motion judge and at trial. Therefore, to the extent that the judge relied on the affidavits offered by FMI in support of the defense, there was no error.

2. *Summary judgment.* Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that a judge shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must "affirmatively demonstrat[e] that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial." *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). We consider both counts of GSEI's complaint in relation to these principles.

a. *Intentional interference with contractual relations.* In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 812-817 (1990). These substantive elements define the material facts for purposes of evaluating the entry of summary judgment on count one of the complaint here. Thus, FMI's burden in the context of summary judgment is to show that there is no genuine issue as to any of these material facts.

It is undisputed that GSEI had a contract with FOREI, and that FMI's lawsuit and lis pendens at least temporarily interfered with the performance of that contract. Therefore, like the motion judge and the parties, we focus on whether there is a genuine dispute regarding the propriety of FMI's suit, and whether there is a genuine dispute regarding harm to GSEI because of the interference with the contract.

i. To determine whether a particular act that interferes with contractual relations of a plaintiff and a third party is improper, it is necessary to consider whether the act had an improper motive or constituted an improper means. See *United States Trucking Corp.* v. *Geltman, supra* at 816-817 & n.10, citing Restatement (Second) of Torts § 767 (1979). The propriety of an actor's motives in a particular setting necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis. The same generally holds true for the evaluation of the means that an actor relies on to achieve a goal.

In this case, however, the means in question consisted of a lawsuit, an act which is subject to evaluation against objective standards. It is clear, for example, that a party is justified in interfering with a third-party's contract with another by filing a lawsuit in a good faith effort to assert legally protected rights. See Restatement (Second) of Torts, *supra* at § 773. At the same time, however, a civil action is wrongful if its initiator does not have probable cause to believe the suit will succeed, and is acting primarily for a purpose other than that of properly adjudicating his claims. See Restatement (Second) of Torts § 674 (a) (1977).

In this case, there was evidence on the record that FMI was motivated primarily to prevent land developers from obtaining the property. An FMI principal testified that FMI originally became interested in buying MacDougalls' to "protect" it from development. When FMI's president believed that the MacDougalls' inside management group (which apparently intended to maintain the property as a boat yard) had purchased the property, he made contact with a group member not to claim that FMI had superior rights in the

property, but to offer his congratulations. After a boat yard business finally bought the property, three FMI principals admitted outright in a letter to the purchaser that the "motivating factor" behind their interest in purchasing MacDougalls' was fear of the developer's bulldozer.

There also was record evidence giving rise to a question whether FMI had a sincere, good faith belief that it had a binding contract with FOREI. FMI's president admitted that he knew that the proposed deal with FOREI was not complete until the FOREI board approved it. After FMI learned that FOREI would not be accepting its offer, FMI never contended that it had a binding contract with FOREI, but instead responded in writing that its offer remained open, and even indicated a willingness to enhance the offer. FMI followed up this letter with a formal "Revised Offer to Purchase" that included a new offer $300,000 higher than the original. After learning that this revised offer had not been accepted, FMI's president (as noted above) called a member of the inside management group to congratulate him on its purchase of the property, rather than inform him (as one might have expected him to do) of his belief that FMI had a prior enforceable contract with FOREI. Days later, when FMI's treasurer learned that GSEI had struck a deal with FOREI, he told an FOREI representative, "You'll be sorry for this!" Shortly thereafter, after reports that GSEI intended to develop the MacDougalls' property appeared in a local newspaper article (that was seen by FMI's president and treasurer), FMI began conferring with counsel.

In sum, as we view the materials before the motion judge, there are presented jury questions as to whether FMI was motivated simply by a spiteful desire to block development, and whether FMI sued FOREI in bad faith and without probable cause to believe that the action would succeed, rather than to assert legitimate rights. If accepted by a fact finder, GSEI's evidence would satisfy the *Geltman* requirement of intentional interference that is improper in motive or means. Compare *Leigh Furniture & Carpet Co.* v. *Isom*, 657 P.2d 293, 306-311 (Utah 1982) (filing of groundless lawsuits

can evidence both improper purpose and improper means in intentional interference with prospective economic relations case), and cases cited.

FMI argues, however, that it did not commence the action against FOREI until after it had consulted with competent counsel and been advised that a suit for specific performance was viable. Therefore, FMI contends, under the advice-of-counsel defense, it is absolutely protected from the conclusion that its actions were improper. We disagree.

To establish the advice-of-counsel defense, the party raising it must show that: (1) he is acting in good faith in the belief that he has good cause for his action and is not seeking an opinion in order to shelter himself; (2) he has made a full and honest disclosure of all the material facts within his knowledge or belief; (3) he is doubtful of his legal rights; (4) he has reason to know that his counsel is competent; (5) he honestly complied with his counsel's advice; and (6) his counsel is of such training and experience that he is able to exercise prudent judgment in such matters. See *Higgins* v. *Pratt*, 316 Mass. 700, 710-711 (1944), and cases cited. See also Restatement (Second) of Torts, *supra* at § 675 (b). With respect to the first element of the defense, it is plain that, for the same reasons that there is a genuine dispute over whether FMI's suit was for an improper motive and constituted an improper means, FMI cannot establish on this record that it acted in good faith in the belief that it had good cause for its action.

In addition, regarding the second element of the defense, the record also contains evidence that FMI failed fully to disclose to its counsel all of the material facts within its knowledge. For example, the president and treasurer of FMI both admitted that FOREI made no offer to sell during the July, 1985, meeting. Nevertheless, FMI's complaint alleged that, on or about the date of the July meeting, FOREI did extend an offer to sell. Both FMI principals also admitted that no offer was accepted during the August, 1985, meeting. However, FMI's complaint alleged that, on or about the date of the August meeting, FMI accepted an offer to sell from

FOREI. Thus, this element of FMI's defense also is not undisputed on the record. There is a question of fact whether the discrepancies between FMI's testimony and its pleadings indicate that FMI did not give its counsel the benefit of full disclosure.

For these reasons, there are genuine issues of fact concerning the propriety of FMI's conduct in filing its lawsuit. The judge therefore erred in "find[ing] and rul[ing]"[3] that there was no issue on this point.[4]

ii. As to the question of GSEI's damages, FMI must show that there is no genuine issue of fact concerning whether GSEI sustained damages due to FOREI's breaking off of its contract with GSEI (see *United Truck Leasing Corp.* v. *Geltman, supra* at 812; Restatement [Second] of Torts, *supra* at § 766), and that such damages are neither speculative nor conjectural. See *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506, 510 (1980), citing *H.D. Watts Co.* v. *American Bond & Mortgage Co.*, 260 Mass. 599, 613-614 (1927). There was evidence before the motion judge that gave rise to a question of fact on this point as well.

For example, the pendency of FMI's suit against FOREI rendered inaccurate representations made by FOREI in the purchase and sale agreement with GSEI and made it impossible for FOREI to perform in strict compliance with the terms of that agreement. There also was evidence that it was FOREI, not GSEI, that refused to enter into additional extension agreements, or to agree to a modification of the terms of the agreement to reflect the change in circumstances occa-

---

[3]"[A] judge does not properly 'make findings' in connection with a summary judgment proceeding . . . but only declares as a matter of law the material facts that are established by the uncontroverted materials submitted in support of, or in opposition to, the motion." *MacLean* v. *Delinsky*, 407 Mass. 869, 878 n.5 (1990).

[4]Because the state of mind and motives of FMI's principals are central to both the *Geltman* requirements and FMI's advice-of-counsel defense, we think it worth repeating that, "[w]here a party's state of mind or motive is in issue, summary judgment is disfavored." *Pinshaw* v. *Metropolitan Dist. Comm'n*, 402 Mass. 687, 695 (1988), citing *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984).

sioned by the existence of the lawsuit. As a consequence, GSEI lost the benefit of its bargain.

FMI asserts that GSEI could have gone through with the sale notwithstanding the pendency of the lawsuit (as FOREI was willing to do), and emphasizes that GSEI elected to suspend its performance after FOREI refused to enter into another extension agreement. These contentions miss the point. The existence of the FMI lawsuit significantly altered the conditions that existed when GSEI and FOREI executed the purchase and sale agreement. Therefore, GSEI could only have performed by assuming a risk (the risk that FMI would win on appeal and cause GSEI to lose the property, time, and interest on its deposit) for which it had not bargained. Thus, GSEI could perhaps have purchased the property, but not on the same terms that it had negotiated with FOREI.

With the benefit of hindsight, we know that FOREI correctly predicted that FMI would not prevail on its appeal of the dismissal, but GSEI could not know this for sure before this appeal was decided, and FOREI was unwilling to await the disposition of the appeal, or to agree to new terms or safeguards to respond to GSEI's concern over the pendency of the suit.

GSEI's record evidence on this point is thin; nevertheless, we conclude that it is for a jury to decide whether the effect of FMI's suit was to induce FOREI to break its contract with GSEI to the detriment of GSEI. The judge erred in concluding that there was no genuine issue of fact on this point.

b. *Violation of G. L. c. 93A.* Count two of GSEI's complaint alleged that FMI's tortious interference with the GSEI-FOREI contract constituted unfair or deceptive acts or practices in violation of G. L. c. 93A, §§ 2 (*a*) and 11. Because we have decided that the question of intentional interference with the contract is for the jury, we reach the same conclusion as to the related c. 93A allegations.

The judgments are reversed and the case is remanded for trial.

*So ordered.*