The plaintiff, Joseph Puleio, an inmate at the Massachusetts Correctional Institution, Concord (MCI-Concord), filed an eight-count complaint concerning a pair of allegedly defective workboots manufactured by defendant Timberland Corporation (Timberland) and purchased from the prison commissary operator, defendant Keefe Commissary Network Sales (Keefe). On Timberland's and Keefe's motions, a Superior Court judge dismissed the complaint for failure to state a claim on which relief could be granted; on the Department of Correction (DOC) defendants' later motion,[3] a second judge dismissed the complaint as to them in a margin endorsement. Puleio appeals. We conclude that some counts were erroneously dismissed; we therefore vacate portions of the judgment of dismissal, and remand for further proceedings.
Background. We summarize the pertinent allegations of the operative complaint, which is the first amended verified complaint with incorporated attachments. Puleio is an inmate of MCI-Concord, serving a sentence of life imprisonment without possibility of parole. In 2011, he purchased a pair of Timberland boots from Keefe, based in part on Timberland's lifetime warranty. After four years of intermittent use, the boots began leaking, and so Puleio wrote to Timberland seeking a replacement under the warranty. After waiting for five months and receiving no response, Puleio again wrote to Timberland, this time adding a G. L. c. 93A demand to his letter.
Timberland replied in writing, stating in part:
"We'd like to inform you of a change we are making in our consumer returns policy. Effective immediately, we will no longer ship product directly to correctional facilities when a consumer is seeking a replacement for defective product. Consumers will need to provide an address outside of the correctional facility for shipment. Alternately, consumers can contact the retailer where they purchased the product for replacement" (emphasis added).
Puleio then attempted to contact Keefe (the retailer), sending his request through MCI-Concord's treasurer as required by prison rules. Puleio's request stated that he had made a warranty claim to Timberland, and that Timberland had advised him to contact the retailer for a replacement, so he asked whether Keefe would honor the lifetime warranty by providing replacement boots.
The next day, the treasurer sent Puleio a memorandum stating that she was "returning [Puleio's] paperwork" and that he could elect to have Timberland honor the lifetime warranty. She informed Puleio, however, that any replacement boots would "need to be sent to an address on the street because their warranty is for a similar or like product and is not the one approved for sale by the [DOC]."
Puleio replied to the treasurer that, because he is serving a life sentence, asking Timberland to send replacement boots to an address outside of MCI-Concord would be useless to him and effectively deprive him of his warranty rights.[4] Puleio asserted (inferentially following Timberland's instruction that to obtain warranty service he could "contact the retailer ... for replacement") that, because Keefe continued to sell Timberland boots to Massachusetts prisoners, Timberland could issue a credit to Keefe that would allow Keefe to provide him with a pair of Timberland boots such as those currently being sold to prisoners.
After receiving no response from the treasurer, Puleio filed an institutional grievance alleging that DOC was "interfer[ing] with the contractual relationship I have with Timberland ... interfering with my warranty rights for the replacement of a defective product." The grievance coordinator denied the grievance, informing Puleio that although he was free to send out his boots for repair or replacement under Timberland's warranty, "the boots will not be allowed back into the institution. Repaired [or] replacement items must come from authorized contract vendors for the DOC. You may then purchase another pair via Keefe ... if you wish to do so."
Puleio appealed the denial of the grievance to the defendant superintendent of MCI-Concord, asserting that the grievance coordinator's rationale made "absolutely no sense whatsoever": having Timberland send replacement boots to an outside address would do nothing for Puleio since he was serving a life sentence. Puleio's appeal pointed out that "Timberland boots continue to be sold to DOC inmates by Keefe .... Why, then, is it not possible for Timberland ... to issue a credit to Keefe ... for my defective pair of workboots and then have Keefe, an authorized DOC contract vendor, provide me with a replacement pair of boots out of stock?" As relief, Puleio requested, among other things, that "Keefe provide me with a replacement pair of workboots under Timberland's manufacturer's warranty." The superintendent denied the grievance appeal, stating that she concurred with the grievance coordinator's findings.
Puleio then filed this suit against Timberland, Keefe, and DOC and two of its officials (hereinafter referred to collectively as DOC unless the context requires otherwise). The first amended complaint asserted claims for (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) breach of contract; (4) unjust enrichment; (5) fraud and deceit; (6) product liability; (7) intentional interference with contractual relations; and (8) unfair or deceptive business practices by Timberland and Keefe in violation of G. L. c. 93A. The complaint was dismissed, and Puleio appealed.
At oral argument, DOC represented to us (in a seeming change of position since the superintendent's denial of the grievance appeal) that it did not object to Timberland issuing a credit that would allow Keefe to furnish a pair of replacement boots to Puleio out of Keefe's stock.[5] Timberland, for its part, represented to us that if the boots were returned to it, inspected, and found to have a defect covered by its warranty, it could issue such a credit. And Keefe represented to us that it was unaware of any impediment to such a resolution. Notwithstanding the apparent availability of this mechanism, approximately six weeks after oral argument, the defendants filed a joint status report, informing us that resolution of the dispute was not possible due to "lack of a viable settlement mechanism." The status report did not, however, discuss the very mechanism previously represented to be viable.
Discussion. We review the sufficiency of Puleio's complaint de novo, taking as true its factual allegations and drawing all reasonable inferences in his favor. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). We consider not only the complaint but also the exhibits attached to it. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).
1. Breach of express warranty (count one). The complaint plausibly alleged a breach of express warranty by Timberland. The complaint asserted that Timberland offered a lifetime warranty and later informed Puleio, pursuant to an immediately-effective change in its return policy, that he could enforce his warranty rights by "contact[ing] the retailer where [he] purchased the product for replacement," i.e., Keefe. Timberland expressly stated this to be an alternative to providing an address outside of the correctional facility for shipment, which would, as described above, not provide an effective mechanism for enforcing his warranty rights.
And, although Timberland's letter is not clear, it did not expressly tie the contact-the-retailer option to any requirement that Puleio first ship his boots to Timberland for inspection to determine if there was a defect covered by the warranty.[6] It is a reasonable inference, at the pleading stage, that Timberland was suggesting that any required inspection could be obtained by contacting the retailer.
The complaint further alleged a breach: Puleio attempted to invoke the warranty enforcement mechanism offered by Timberland by trying to contact Keefe, but failed to obtain warranty service. The reason for this failure cannot be determined from the complaint and attachments.[7] Timberland may or may not have defenses or cross claims, based on the actions of DOC officials, Keefe, or otherwise, in response to the express warranty claim. At this stage, however, the complaint adequately alleged that, for whatever reason, Timberland breached the warranty.[8]
2. Breach of implied warranty of merchantability (count two). The judge dismissed the implied warranty of merchantability claim on the ground that Puleio had not alleged that a defect in the boots caused any personal injury or any damage to property other than the boots themselves. On appeal, Puleio argues that the complaint's allegation that the boots leaked during inclement weather was sufficient to allege that he suffered a personal injury to his feet. We think this goes beyond a "reasonable inference" from the complaint, Curtis, 458 Mass. at 676 ; moreover, Puleio did not make any such argument in opposition to the motions to dismiss. Puleio thus has not identified any error in the dismissal of the implied warranty claim.
3. Breach of contract (count three). For substantially the reasons discussed above in connection with the express warranty claim, we conclude that the complaint stated a claim against Timberland for breach of contract. See Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 396 Mass. 818, 822 (1986) ("an express warranty claim is ... an action of contract").
4. Unjust enrichment (count four). "Unjust enrichment is defined as retention of money or property of another against the fundamental principles of justice or equity and good conscience" (quotation omitted). Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). Puleio argues that the defendants were unjustly enriched because they sold him a defective pair of boots with a lifetime warranty and then deprived him of the benefit of that warranty, thus unjustly retaining the amount he paid for the boots (or at least the portion of that amount that corresponds to the cost of warranty coverage). As for Timberland, the allegations underlying Puleio's express warranty and contract claims, see supra, were also sufficient to state a claim that Timberland's retention of a portion of the boots' purchase price was unjust and inequitable.
As for Keefe, the complaint alleged that Keefe profited from the sale of the defective boots. It further alleged that when Puleio followed Timberland's direction by contacting Keefe (through the MCI-Concord treasurer) to request replacement boots, the treasurer's response rebuffed the request. The response told Puleio that he could make his request to Timberland instead, provided that he designated an "address on the street" where any replacement boots could be shipped. The complaint alleged that this was "Keefe's suggested remedy" -- which at this stage we must construe as alleging that Keefe had at least some input into the treasurer's response -- and that it effectively left Puleio with "no warranty rights at all."
Drawing all reasonable inferences in Puleio's favor, see Curtis, 458 Mass. at 676, we read the complaint to allege that Timberland informed Puleio that he could obtain warranty service from the original retailer. In spite of this, the complaint alleged, Keefe refused Puleio's request for such service and instead referred him back to Timberland, where he had started. The complaint did not use the word "runaround," but that was its clear import.
If Keefe had an arrangement to provide Timberland warranty service to purchasers such as Puleio, and then refused to carry it out, Keefe's retention of a portion of the original purchase price could plausibly be viewed as inequitable. In the alternative, if Timberland had not made such an arrangement with Keefe, then Timberland's retention of that portion of the boots' purchase price that funded warranty service could be viewed as inequitable, and Keefe's having referred Puleio back to Timberland could be viewed quite differently. Puleio's complaint was not required to identify only Timberland, or only Keefe, as the alleged inequitable actor; "a complaint may demand relief in the alternative and may contain inconsistent allegations." Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). The complaint thus stated unjust enrichment claims against both Keefe and Timberland.[9] Of course, whether Puleio can prove either or both claims remains to be seen.
As against DOC, however, the unjust enrichment claim was properly dismissed, because the complaint did not plausibly allege that DOC had received any money from the original sale of the boots to Puleio.
5. Fraud and deceit (count five).[10] "In a deceit action, the plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.' " Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963). The circumstances constituting fraud must be pleaded with particularity. See Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974). Here, as the judge ruled, the complaint did not allege with particularity any false statement of material fact. That Timberland allegedly made certain promises in connection with its warranty, and then failed to honor those promises, does not equate to an allegation that Timberland made false statements of fact. The fraud and deceit claim was properly dismissed.
6. Product liability (count six).[11] Puleio accepts that his product liability claim required an allegation that the boots were defective when first placed into the stream of commerce. See Fernandes v. Union Bookbinding Co., 400 Mass. 27, 37 (1987) (implied warranty of merchantability claim requires that defect or breach have existed at time of sale). The judge found no such allegation in the complaint, noting that Puleio did not identify any problems with the boots until several years after he bought them.[12] Puleio now argues that the complaint did allege such a defect, by asserting that Timberland both adopted a warranty replacement policy and then narrowed it, to his and other consumers' detriment, after he purchased the boots. Puleio contends that the existence of a defect may be inferred from these allegations, because the warranty policy itself would have been unnecessary if boots were never defective, and the narrowing of the policy would have been unnecessary if there had not been a high rate of defects. We are not persuaded. Even if these conclusions had been set forth in the complaint, they would not be "enough to raise a right to relief above the speculative level," as Iannacchino requires. 451 Mass. at 636. Nothing in the complaint plausibly connected the problems Puleio experienced with his particular set of boots to either the existence of or the change in the warranty policy, let alone to a defect that existed in his boots at the time he bought them.
7. Intentional interference with contractual relations (count seven). "In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). On appeal, Puleio argues that his complaint stated a claim that the DOC defendants[13] intentionally interfered with Timberland's and Keefe's performance of Timberland's warranty. The DOC defendants did so, he argues, by prohibiting Timberland from shipping replacement boots to Puleio, either directly or through Keefe.
The claim does not lie against the DOC, which, as a public employer under the Massachusetts Tort Claims Act, is immune from liability for such intentional torts. G. L. c. 258, § 10 (c ). See Lafayette Place Assocs. v. Boston Redev. Auth., 427 Mass. 509, 528 (1998), cert. denied, 525 U.S. 1177 (1999). Nor did the complaint separately state a claim against the DOC Commissioner; among other defects, the complaint failed to allege that the Commissioner was personally involved in interfering with Puleio's contract with Timberland.[14]
As for the superintendent of MCI-Concord, although the complaint alleged that she personally denied Puleio's grievance appeal, the complaint did not allege that she personally interfered with the performance of the Timberland warranty through any "improper ... motive or means." G.S. Enters., Inc., 410 Mass. at 272. To the extent that any interference arose from the treasurer's returning to Puleio his request to Keefe to assist in fulfilling Timberland's obligations under its warranty, the complaint did not allege that the superintendent was personally involved in that action. To be sure, the complaint could be read to allege that the superintendent's denial of the grievance appeal was arbitrary and irrational, in that she prevented Timberland and Keefe from implementing a commonsense warranty service mechanism that would have protected Puleio's rights without increasing any risk of contraband entering the institution. Although such bureaucratic indifference would be regrettable, Puleio cites no authority for the proposition that it would constitute an improper motive in this context.[15] Accordingly, the claim for intentional interference with contractual relations was properly dismissed.
8. G. L. c. 93A (count eight). To state a G. L. c. 93A claim for unfair or deceptive acts or practices against Timberland or Keefe,[16] Puleio was required to allege an act or practice that is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," one that "is immoral, unethical, oppressive, or unscrupulous," and would "cause[ ] substantial injury to consumers" (quotation omitted). PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). The judge concluded that Puleio had not alleged any such act. On appeal, Puleio points to his allegation that, after he purchased the boots in reliance on the warranty, Timberland changed its warranty policy in a manner that made it impossible for him to obtain effective warranty service. We are not persuaded that this allegation goes sufficiently beyond an ordinary claim for breach of contract claim to meet the criteria set forth in PMP Assocs. "A 'breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under G. L. c. 93A.' " Bank of America, N.A. v. Prestige Imports, 75 Mass. App. Ct. 741, 770 (2009), quoting Framingham Auto Sales, Inc. v. Workers' Credit Union, 41 Mass. App. Ct. 416, 418 (1996). As for Keefe, Puleio has failed to articulate on appeal how the complaint alleged any acts or practices sufficient to support a G. L. c. 93A claim.
Conclusion. Insofar as the judgment dismisses counts two, five, six, seven, and eight of the complaint, it is affirmed. Insofar as the judgment dismisses count four of the complaint, it is vacated as to all parties, including the DOC defendants.[17] Insofar as the judgment dismisses counts one and three, it is vacated as to Timberland Corporation and the DOC defendants. The case is remanded for further proceedings in accordance with this memorandum and order.
So ordered.
Affirmed in part; vacated in part.

That motion attached an affidavit and sought summary judgment in the alternative. Because it is unclear whether the second judge considered the affidavit, we treat her ruling as a dismissal for failure to state a claim.

The complaint and attachments appear to assume that DOC would not allow into the institution any replacement boots sent by Timberland to an outside address, due to concerns that contraband could be concealed in them. DOC's motion to dismiss cited a DOC regulation providing that items available for purchase at an institutional inmate canteen or through approved vendors cannot otherwise be authorized to enter an institution through an inmate property permission slip (i.e., at an inmate's request). The substance of that regulation now appears at 103 Code Mass. Regs. § 403.13(4) (2017).

DOC continued to express security concerns with Timberland shipping boots directly to Puleio.

The complaint and attachments do not purport to set forth the full terms of the alleged warranty. We of course express no view on the scope of any such warranty, including on whether it excludes claims based on ordinary wear and tear.

It is possible, for example, that Timberland failed to make adequate arrangements with Keefe for prisoners to enforce their warranty rights through Keefe; or that some DOC regulation prevented Timberland from performing under the terms of its original warranty; or that MCI-Concord's treasurer did not actually pass Puleio's request for warranty service along to Keefe; or that Keefe, having received the request, declined to furnish such service. Or, Timberland's contact-the-retailer option might have had a more limited meaning than what Puleio understood. Such questions cannot be answered on consideration of a motion made pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

The complaint did not state express warranty claims against Keefe or DOC; it did not allege that Keefe or DOC themselves offered any warranty. Although the complaint incorporated an attachment suggesting that Keefe offered a warranty, the attachment also stated that Keefe's warranty had expired. Puleio does not now argue otherwise.

We view the unjust enrichment claim against Keefe as being wholly independent of any warranty or return option that Keefe may have offered on its own behalf. The unjust enrichment claim rests on the allegation that, despite Timberland's implicit representation that Keefe would provide Timberland warranty service, Keefe (for reasons not yet clear) did not do so.

For present purposes we may treat the terms "deceit" and "fraud" as interchangeable. See Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 44 (1970) ; Brown v. Gerstein, 17 Mass. App. Ct. 558, 567 n.14 (1984).

Neither Puleio's complaint nor his brief on appeal explains how this claim differs from his claim, discussed supra, for breach of the implied warranty of merchantability. Nevertheless, because he pleaded them separately and the judge analyzed them separately, we will do the same, for the sake of clarity.

The complaint alleged that Puleio bought the boots in November, 2011, and that after wearing the boots for some twenty months in total, he wrote to Timberland in March, 2015, complaining that the soles had leaked for at least four months and that the leather uppers had cracked where the toebox met the lacing, admitting additional water.

Puleio does not argue that the judge erred in dismissing this claim as against Timberland or Keefe.

The complaint alleged that the Commissioner was "responsible for the overall operation and running" of DOC and that her actions were "synonymous" with those of DOC.

Cf. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990) (unfair age discrimination would be improper motive; desire to benefit customers and self financially would not); Cavicchi v. Koski, 67 Mass. App. Ct. 654, 658 (2006) ("retaliation or ill will toward the plaintiff" would be improper motive).

The complaint did not assert such a claim against the DOC.

Although the claims against the DOC defendants were properly dismissed, we conclude that those defendants should remain parties, because their participation may be necessary in the event Puleio succeeds in obtaining relief against Timberland, Keefe, or both. Cf. Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 469-471 (1990) (ordering that Commissioner of Correction be joined as defendant on remand, because "Commissioner [was] in a position to thwart" existing defendant's compliance with remedial order).