SUSAN M. CURTIS, executrix,[1] vs. HERB CHAMBERS I-95, INC.,[2] & others.[3]

Essex. October 5, 2010. - January 18, 2011.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[4]

*Copyright. Federal Preemption. Jurisdiction,* Federal preemption. *Contract,* Implied covenant of good faith and fair dealing, Interference with contractual relations. *Consumer Protection Act,* Unfair or deceptive act.

In a civil action arising from the use of promotional materials, and alleging claims of common-law trade dress, breach of the implied covenant of good faith and fair dealing, interference with advantageous business relationships, and unfair and deceptive trade practices, the judge properly dismissed the complaint on the ground that all the claims were preempted by the Federal Digital Millennium Copyright Act, 17 U.S.C. § 301 (2006), where the plaintiff could not prevail on any of the four State law claims without a right equivalent to copyright. [676-683]

CIVIL ACTION commenced in the Superior Court Department on February 8, 2007.

A motion to dismiss was heard by *Patrick J. Riley,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Carol E. Head (Jonathan M. Albano* with her) for Globe Specialty Products, Inc.

*Edward C. Cooley* for Herb Chambers I-95, Inc., & others.

*Robert S. Wolfe* for the plaintiff.

---

[1]Of the estate of Harold Curtis.

[2]Doing business as Herb Chambers Dodge.

[3]Silver Star, Inc., doing business as Herb Chambers Kia Lynnfield; David Dinger Ford, Inc., doing business as Herb Chambers Ford; Herb Chambers of Millbury, Inc., doing business as Herb Chambers Chrysler, Plymouth, Dodge; Herb Chambers of Rehoboth, Inc., doing business as Herb Chambers Kia (collectively, Chambers defendants); and Globe Specialty Products, Inc. (Globe Specialty).

[4]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

GANTS, J. The plaintiff, Susan M. Curtis, the executrix of the estate of Harold Curtis, filed a complaint in Superior Court against the Chambers defendants (see note 3, *supra*) and Globe Specialty Products, Inc. (Globe Specialty), alleging: common-law trade dress (count I), breach of the implied covenant of good faith and fair dealing (count II), interference with advantageous business relations (count III), and unfair and deceptive trade practices in violation of G. L. c. 93A (count IV). A judge dismissed the complaint, concluding that all the claims were preempted by the Federal Digital Millennium Copyright Act, 17 U.S.C. § 301 (2006) (Copyright Act). The Appeals Court affirmed the dismissal of count I, but reversed the dismissal of the remaining counts, and remanded the case. *Curtis* v. *Herb Chambers I-95, Inc.*, 75 Mass. App. Ct. 662, 670, 672-673, 677 (2009). We granted the defendants' application for further appellate review. We conclude that § 301 of the Copyright Act preempts all the claims in the complaint, and affirm the dismissal of the complaint.

*Background.* Harold Curtis, doing business as Harold Curtis & Associates (Curtis), initially filed suit against the defendants in the United States District Court for the District of Massachusetts, asserting infringement under the Copyright Act, and trade dress violations of the Lanham Act, 15 U.S.C. § 1125 (2006), as well as the four State law claims. The Federal judge allowed the defendants' motion for summary judgment as to the Federal law claims. As to the claim of copyright infringement, the judge concluded that Curtis had "not registered any copyright for the advertisements at issue, and copyright registration is a condition precedent to bringing an infringement action." As to the Lanham Act claim, the judge concluded that Curtis had failed to make the "vigorous evidentiary showing" needed to prove that the advertisements had acquired secondary meaning, and that secondary meaning was required to recover on a statutory trade dress claim involving product design.[5] Having dismissed the two Federal claims, the judge declined to exercise supplemental

---

[5]The judge noted that a "product acquires secondary meaning when 'the primary significance of a product feature or term is to identify the source of the product rather than the product itself,' " quoting *Yankee Candle Co.* v. *Bridgewater Candle Co.*, 99 F. Supp. 2d 140, 153 (D. Mass. 2000), aff'd, 259 F.3d 25 (1st Cir. 2001).

jurisdiction over the State law claims, and declared that he would "transfer" the case to the Massachusetts Superior Court. After the case was forwarded and assigned a docket number, a Superior Court judge correctly allowed the defendants' motion to dismiss because a Federal court does not have authority to transfer to a State court a case originally filed in Federal court. See *Maher* v. *GSI Lumonics, Inc.*, 433 F.3d 123, 125 & n.2 (1st Cir. 2005). Curtis's executrix then filed the instant complaint in Superior Court.[6]

*Discussion.* We review the allowance of a motion to dismiss de novo. *Harhen* v. *Brown*, 431 Mass. 838, 845 (2000). We accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff. *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998). Preemption under the Copyright Act determines whether a court has subject matter jurisdiction over the claim under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), and whether the allegations state a claim on which relief can be granted under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In making this determination, we look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008).

The gist of the complaint is that Harold Curtis "designed and produced unique and distinctive printed promotional materials used by automobile dealerships to conduct direct mail campaigns and advertise dealership sales events." Between May and November, 2000, he contracted with and sold marketing services using these distinctive and unique advertising materials to the Chambers defendants. In November, 2000, Globe Specialty approached Curtis and offered to print and distribute the advertising materials that he was selling to the automobile dealerships, but he declined the offer. Beginning in February, 2001, Globe Specialty distributed and published marketing materials for the Chambers defendants that, "[t]o an ordinary observer . . . were substantially similar to those produced by Curtis," and the Chambers defend-

---

[6]Harold Curtis died on September 26, 2006, after the Federal law claims were dismissed. Susan Curtis was appointed executrix of his estate and filed the Superior Court complaint.

ants ceased doing business with Curtis. Curtis demanded in writing that the defendants terminate their conduct, but the demand was ignored. Because the promotional materials published and distributed by Globe Specialty for the Chambers defendants were used so often in the same marketing areas served by other Curtis automobile dealership clients, Curtis could no longer sell his promotional materials and services to the automobile dealerships in these marketing areas.

Under the preemption provision of the Copyright Act, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright and that come within the subject matter of copyright are governed exclusively by the Act. 17 U.S.C. § 301(a). "[N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." *Id.*[7] To prevail on a motion to dismiss a State law claim based on preemption under the Act, a defendant must show, first, that the work at issue falls within the type of works protected by the Copyright Act (subject matter requirement), and, second, that the State law claim asserts a legal or equitable right equivalent to an exclusive right granted under § 106 of the Act (equivalency requirement). See *Lee* v. *Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 548 (2005); *National Basketball Ass'n* v. *Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997). Because there is no dispute that the advertising materials at issue

---

[7]The relevant provisions of 17 U.S.C. § 301 (2006), state:

"(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

"(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to — (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or . . . (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . ."

in the State law claims meet the subject matter requirement, the central issue in this case is the interpretation and application of the equivalency requirement.

A State law claim rests on a legal or equitable right that is equivalent to an exclusive right granted under the Copyright Act where: (1) an act that abridges the right would, by itself, infringe an exclusive right provided by Federal copyright law, e.g., an act of reproduction, performance, distribution, or display; and (2) the State law claim includes no "extra element" that "changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim' " (emphasis in original). *Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (*Altai*), quoting *Mayer* v. *Josiah Wedgwood & Sons*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985). See 1 M.B. Nimmer & D. Nimmer, Copyright § 1.01[B][1], at 1-11 — 1-13 (2010) (Nimmer) ("right that is 'equivalent to copyright' is one that is infringed by the mere act of reproduction, performance, distribution, or display . . . [b]ut if qualitatively other elements are required, . . . . in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright' "). To determine whether a claim is qualitatively different, we look at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Altai, supra*, quoting 1 R.M. Milgrim, Trade Secrets § 2.06A[3], at 2-150 (1992). "[T]he mere fact that a state law requires scienter as a condition to liability, whereas the Copyright Act does not, cannot save the state law from pre-emption." 1 Nimmer, *supra* at 1-11 — 1-12. See *Altai, supra.*

In the context of this case, the equivalency requirement can be stated somewhat differently. A State law claim is qualitatively different from a copyright infringement claim if the plaintiff can prevail even though the plaintiff holds no copyright or right equivalent to copyright in the advertising materials. Because Curtis cannot prevail on any of the four State law claims without a right equivalent to copyright, the Copyright Act preempts each of the four claims. We address each separately.

Curtis's common-law trade dress claim (count I) essentially alleges that Globe Specialty and the Chambers defendants produced materials that imitated his advertisement design and

represented it as their own. This is characterized in the law as "reverse passing off," a variant of an unfair competition claim. See *Dastar Corp.* v. *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (defining reverse passing off); 1 Nimmer, *supra* at § 1.01[B][1][e], at 1-35 — 1-36. But this reverse passing off claim can succeed only if Curtis held a right equivalent to copyright that could prevent the defendants from copying his advertising design and passing it off as their own. Therefore, the nature of the claim is not qualitatively different from copyright infringement, and so is preempted. See *Kodadek* v. *MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (reverse passing off claims preempted); *Rutledge* v. *High Point Regional Health Sys.*, 558 F. Supp. 2d 611, 621 n.4 (M.D.N.C. 2008) (collecting cases, stating, "Courts nationwide recognize that the Copyright Act preempts claims of 'reverse passing off' brought under state laws governing unfair and deceptive trade practices"). "State claims of reverse passing off based on mere copying are always preempted, regardless of the extent of copying, as are state reverse-passing-off claims alleging that consumer confusion results solely or inherently from the defendant's copying of the plaintiff's product." 5 W.F. Patry, Copyright § 18:49, at 18-172 (2010). See 1 Nimmer, *supra* at § 1.01[B][1][e], at 1-35 (reverse passing off "is in fact a disguised copyright infringement claim, and hence pre-empted").[8]

Curtis's claim of breach of the implied covenant of good faith and fair dealing (count II) alleges that, by copying Curtis's advertising design, the defendants intentionally interfered with his business relationships with other automobile dealerships and

---

[8]Apart from preemption, there is a separate and independent ground on which this claim must be dismissed. We agree with the Appeals Court that the doctrine of collateral estoppel requires its dismissal because the Federal District Court found that Curtis's promotional materials had not acquired secondary meaning. See *Curtis* v. *Herb Chambers I-95, Inc.*, 75 Mass. App. Ct. 662, 669 (2009). In Massachusetts, a plaintiff may recover on a reverse passing off claim only where the design of the product or the features of the service have acquired a secondary meaning "such that confusion as to its source is likely to arise if the defendant is allowed to copy them." *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 769 (1986). See *Forster Mfg. Co.* v. *Cutter-Tower Co.*, 211 Mass. 219, 222 (1912) ("The wrong of unfair competition is present where goods are so dressed in form, or marked by decorative symbols, that the ultimate consumer when the goods are distributed for use in the ordinary course of trade, either is, or possibly may be, deceived").

"violated strong public policies." Curtis does not allege that the Chambers defendants agreed, either expressly or impliedly by words or conduct, not to copy or use the Curtis designs following the termination of their contracts.[9] Rather, Curtis claims that the implied covenant creates such an agreement as a matter of a law. See *Wrench LLC* v. *Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001), cert. denied, 534 U.S. 1114 (2002) (distinguishing between implied-in-fact contract, where there is meeting of minds of parties by words or conduct, and contract implied in law, which is not true contract but quasi contract with obligations imposed by law). To prevail, Curtis must show that the defendants violated the implied covenant by intentionally using his designs in their advertising materials after their contracts with Curtis had terminated.[10]

Under Massachusetts law, however, the implied covenant does not create rights or duties beyond those the parties agreed to when they entered into the contract. See *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 385, cert. denied sub nom. *Globe Newspapers Co.* v. *Ayash*, 546 U.S. 927 (2005); *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant ensures that the parties act in good faith so that neither does "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Druker* v. *Roland Wm. Jutras Assocs., Inc.*, 370 Mass. 383, 385 (1976), quoting *Uproar Co.* v. *National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.), cert.

---

[9]If the complaint had alleged that the Chambers defendants committed a breach of an agreement to pay Curtis for the use of his promotional materials, the claim would not be preempted. Such a claim rests on a promise to pay, not on Curtis having a copyright or equivalent right in the promotional materials. See *Lee* v. *Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 550-551, 553 (2005) (breach of contractual promises to pay and allegations of converted royalties not preempted); *Wrench LLC* v. *Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001), cert. denied, 534 U.S. 1114 (2002) (applying Michigan law); 1 M.B. Nimmer & D. Nimmer, Copyright § 1.01[B][1][a][i], at 1-15 (2010) (enforcement of promise to pay for reproduction and distribution of copies survives preemption).

[10]As the Appeals Court correctly noted, because a claim of breach of the implied covenant of good faith and fair dealing rests on a contract between a plaintiff and defendant, the plaintiff's claim against Globe Specialty must be dismissed regardless of preemption because the plaintiff does not allege a contract with Globe Specialty. *Curtis* v. *Herb Chambers I-95, Inc., supra* at 670.

denied, 298 U.S. 670 (1936). See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471-474 (1991). Where Curtis does not allege that the Chambers defendants promised to pay him for the use of his designs and materials following termination of their contracts, such a promise cannot be implied as a matter of law through the covenant of good faith and fair dealing. See *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, *supra* at 385-386. And if such a promise were to be implied as a matter of law, the claim would be preempted, because the plaintiff would be claiming under our common law a legal right or entitlement equivalent to copyright. See *Wrench LLC* v. *Taco Bell Corp.*, *supra* at 456, 459 (quasi contract implied in law is preempted); *Briarpatch Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306-307 (2d Cir. 2004), cert. denied, 544 U.S. 949 (2005) (same), quoting 1 Nimmer, *supra* at § 1.01[B][1][g].

Curtis's claim of interference with advantageous business relations (count III) alleges that the defendants intended to interfere with Curtis's business relationships with other automobile dealerships by copying his advertising designs. To prevail on such a claim, Curtis would need to show that the defendants intentionally interfered with these business relationships with an improper motive or means. See *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 273 (1991); *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 816-817 (1990). The complaint does not allege an improper motive. The only improper means alleged is the reproduction of Curtis's design, which is improper only if Curtis had a legal right or entitlement equivalent to copyright. Because Curtis may prevail on this claim only if he held such a right or entitlement equivalent to copyright, the Copyright Act preempts this claim. *Harper & Row, Publishers* v. *Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985) ("additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental non-equivalence between the state and federal rights implicated"). See *Data Gen. Corp.* v. *Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164-1165 (1st Cir. 1994) (same, applying Massachusetts law); *Tingley Sys., Inc.*

v. *CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 111-112 (D. Mass. 2001) (same, applying Massachusetts law and collecting cases); 1 Nimmer, *supra* at § 1.01[B][1][a][ii], at 1-17 — 1-18 (preemption justified because "rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright").

Curtis's claim of unfair and deceptive trade practices in violation of G. L. c. 93A (count IV) alleges simply that the defendants' actions were "unfair and deceptive as defined in G. L. c. 93A." Because G. L. c. 93A "does not itself define what constitutes an unfair act or practice," *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 778 (1986), we rely on the interpretation of unfairness by the Federal Trade Commission in identifying the "considerations to be used in determining whether a practice is to be deemed unfair: '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous; (3) . . . causes substantial injury [to] . . . competitors or other businessmen.' " *Id.*, quoting *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). Because the plaintiff does not allege any fiduciary relationship with any defendant (contrast *Druker* v. *Roland Wm. Jutras Assocs., Inc.*, *supra* at 384), the defendants' actions may be unfair under G. L. c. 93A only if Curtis had a right or entitlement equivalent to copyright, so the unfairness claim under c. 93A is preempted under the Copyright Act. "[L]abeling conduct commercially immoral or, as under chapter 93A, unfair, immoral, unethical or unscrupulous, does not save a chapter 93A claim from preemption." *Tingley Sys., Inc.* v. *CSC Consulting, Inc.*, *supra* at 108. See *John G. Danielson, Inc.* v. *Winchester-Conant Props., Inc.*, 322 F.3d 26, 44-45 & n.8 (1st Cir. 2003) (G. L. c. 93A claim of unfair competition based on distribution of similar architectural drawings preempted); *Rubin* v. *Brooks/Cole Publ. Co.*, 836 F. Supp. 909, 923 (D. Mass. 1993) (commercial immorality cannot save State law claim from preemption); 1 Nimmer, *supra* at § 1.01[B][1][f][iv], at 1-50 — 1-51 ("decisive weight of the case law holds 'commercial immorality' causes of action equivalent to copyright claims, and hence pre-empted").

Deception through fraudulent misrepresentation is generally

not preempted, because it does not rest on any right or entitlement equivalent to copyright. See *Lee* v. *Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 552-553 (2005) (misrepresentation would allow G. L. c. 93A claim to survive preemption); *Valente-Kritzer Video* v. *Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989), cert. denied, 439 U.S. 1062 (1990) (claim of misrepresentation survives preemption); 1 Nimmer, *supra* at § 1.01 [B][1][e], at 1-35 ("crucial to liability under a deceptive trade practices cause of action is the element of misrepresentation or deception, which is no part of a cause of action for copyright infringement" and, thus, not preempted). But the only deception alleged here is the reverse passing off in the trade dress claim, which, as discussed *supra*, is preempted. "Courts have refused to 'conclude that an allegation of misrepresentation based solely on an alleged infringer's act of displaying, selling or promoting the infringing work as his or her own creation, is sufficient to remove a state based claim from the preemptive reach of 17 U.S.C. § 301(a).' " *Marobie-FL, Inc.* v. *National Ass'n of Fire Equip. Distrib.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997), quoting *FASA Corp.* v. *Playmates Toys, Inc.*, 869 F. Supp. 1334, 1361-1362 (N.D. Ill. 1994).

*Conclusion.* For these reasons, we conclude that the Copyright Act preempts all the claims in the complaint and that the Superior Court judge correctly dismissed the complaint.[11] We, therefore, affirm the judgment of dismissal.

*So ordered.*

---

[11]In view of this conclusion, we need not address whether the claims for interference with advantageous business relations and for unfair and deceptive trade practices in violation of G. L. c. 93A survive the death of Harold Curtis.