NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-112

JOSEPH T. BAKER

vs.

MASSACHUSETTS STATE POLICE DEPARTMENT & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2019, the plaintiff, Joseph T. Baker, resigned from the Massachusetts State police department (State police) after twenty-five years of service. He then filed this action in Superior Court, claiming discrimination on the basis of religion in violation of G. L. c. 151B, § 4 (1); retaliation in violation of G. L. c. 151B, § 4 (4); conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985 (3); constructive discharge; violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; and violation of 42 U.S.C. § 1981. A judge dismissed all of Baker's claims pursuant to Mass. R. Civ. P.

---

[1] Thomas J. Majenski, Robert Favuzza, Richard Warmington, David Debuccia, and John T. Mill.

12 (b) (6), 365 Mass. 754 (1974). Now proceeding pro se, Baker appeals from the dismissal of his claims for retaliation and constructive discharge. We reverse. The facts alleged by Baker plausibly suggest an entitlement to relief on his claim for retaliation. In addition, although constructive discharge is not an independent cause of action under Massachusetts law, on remand Baker may move to amend his complaint if he wishes to clarify that he is asserting a claim for wrongful discharge separate from his other listed claims.

Discussion. We review the sufficiency of Baker's complaint de novo. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008).

1. Baker's claim for retaliation. Although Baker does not challenge the dismissal of his discrimination and civil rights claims, a claim of retaliation is distinct from one for discrimination and may succeed even if an underlying discrimination claim fails. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 121-122 (2000). General Laws c. 151B, § 4 (4), makes it unlawful for "any person, employer, labor organization or employment agency to discharge, expel or

2

otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5]."  To make out a prima facie case for retaliation, a plaintiff must "show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action."  Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 260 (2021), quoting Mole v. University of Mass., 442 Mass. 582, 591-592 (2004).

The State police do not dispute at this stage of the proceeding that Baker engaged in protected conduct by filing an internal complaint alleging discrimination by his supervisor Major Thomas Majenski.  Instead, the State police contend that Baker failed to plead an adverse employment action.  An adverse employment action is one that "constitute[s] a change in working conditions that 'create[s] a material disadvantage in the plaintiff's employment'" (citation omitted).  Ritchie v. Department of State Police, 60 Mass. App. Ct. 655, 665 (2004).  "Cases have employed the phrase 'adverse employment action' to refer to the effects on working terms, conditions, or privileges that are material . . . as opposed to those effects that are trivial."  King v. Boston, 71 Mass. App. Ct. 460, 468 (2008).

3

The judge concluded that Baker did not suffer an adverse employment action because "[t]he defendants did not demote him, did not relocate him involuntarily, did not change his work conditions at all." We disagree for two reasons.

First, accepting Baker's allegations as true and drawing all reasonable inferences in his favor, see Curtis, 458 Mass. at 676, Baker has plausibly alleged that his submission of an internal affairs complaint against Majenski resulted in material changes to his working conditions, including his right to have his complaint investigated and resolved in accordance with State police policies. Baker alleges that even though he filed his complaint pursuant to the State police's policy on personnel investigations, to be investigated by the internal affairs section, Lieutenant Colonel Richard Warmington diverted the complaint to the harassment investigation unit, which conducts investigations under a different policy. Baker further alleges that after he learned that Warmington was involved in the investigation, Baker asked that he be recused due to the fact that Majenski had been Warmington's executive officer at Troop D and Warmington recommended him to serve as its commander. Even though other officers assured Baker in writing that Warmington was recused from the investigation, Warmington signed the letter informing Baker that the investigation was closed and that "all

4

charges against Maj. Majenski were either not sustained, or unfounded." In addition, the State police denied Baker a copy of the investigative report, "in direct conflict with the earlier written confirmation that he would be entitled to the investigation upon completion." These alleged irregularities in how the State police handled Baker's internal affairs complaint plausibly suggest that he experienced a material disadvantage in his working terms, conditions, or privileges as a result of his protected conduct. See Ritchie, 60 Mass. App. Ct. at 665 (plaintiff who alleged misuse of employee observation report and evaluation system following filing of internal harassment complaint sufficiently alleged adverse employment action).

Second, Baker has plausibly alleged that he was constructively discharged from his position at Troop D headquarters as a result of his protected conduct. A constructive discharge "occurs when the employer's conduct effectively forces an employee to resign," GTE Prods. Corp. v. Stewart, 421 Mass. 22, 33-34 (1995), quoting Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244-1245 (1994), and it can serve as the basis for an adverse employment action for a retaliation claim under G. L. c. 151B, § 4, see Green v. Harvard Vanguard Med. Assocs., Inc., 79 Mass. App. Ct. 1, 14 (2011). To prove a constructive discharge, "the trier of fact must be satisfied

5

that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign" (citation omitted). GTE Prods. Corp., 421 Mass. at 34. "The test is met if, based on an objective assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable." Id. At the pleading stage, Baker's allegations must only plausibly suggest an entitlement to relief. Iannacchino, 451 Mass. at 636.

Here, Baker's allegations plausibly show a constructive discharge. He alleges that, as his supervisor, Majenski "repeatedly mocked, belittled, and spoke down to [Baker] in front of superiors, contemporaries, subordinates, and civilian employees." Majenski "ridiculed [Baker's] religion, performance of his duties, his voice, and his ability to articulate his position with both the spoken and written word, in front of several Troop D officers and [t]roopers." Notwithstanding Baker's "exemplary service record and outstanding fitness reports, "Majenski denied him "coveted administrative assignments as a station commander" in favor of officers "with less time in service and grade," including some who had been criminally charged for conduct related to the performance of their duties. Finally, Baker alleges that after the State

6

police dismissed his internal affairs complaint against Majenski and informed Baker that Majenski would be returning to Troop D headquarters to continue serving as his supervisor, Baker was told that he had to either remain in his current position at Troop D or accept a transfer to Troop H or Troop C, both of which would require a commute of at least three hours a day. Baker resigned "rather than continue to subject himself to the hostile and offensive work environment or deprive his family of his availability."

These allegations plausibly suggest that Baker was subjected to such difficult and unpleasant conditions that "a reasonable person in the employee's shoes would have felt compelled to resign." GTE Prods. Corp., 421 Mass. at 34. Although the judge concluded that Baker's decision to resign "cannot be deemed forced or inescapable," such a factual determination cannot be made at the pleading stage, particularly where the judge did not consider all the factors that contributed to the "hostile and offensive work environment" to which Baker was allegedly subjected. Nor do we agree that the State police's proposals to reassign Baker to Troop H or Troop C foreclose a finding of an adverse employment action. According to the complaint, both proposed transfers would have entailed a far longer commute, exposed Baker to dangerous driving

7

conditions, and deprived him of time with his family. "Because we focus on a reasonable person in the employee's position, we examine whether an employee has suffered an 'adverse employment action' on a case-by-case basis." Yee v. Massachusetts State Police, 481 Mass. 290, 297 (2019), quoting King, 71 Mass. App. Ct. at 470. For example, "[a] lateral transfer from an evening to a day shift may be an adverse employment action to one employee, but be welcomed by another." Id. Where Baker plausibly alleges that the choices he faced upon Majenski's return to Troop D headquarters were all "totally unacceptable" and, as a result, "a reasonable person in [Baker's] shoes would have felt compelled to resign," it was improper to dismiss his retaliation claim on the ground that he failed to plead an adverse employment action.

2. Baker's claim for constructive discharge. In addition to his other claims, Baker asserted constructive discharge as a separate cause of action. In its brief, the State police contend that Baker's claim for constructive discharge fails because "there is no such independent cause of action under Massachusetts law." See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 51 (2020). However, the State police did not raise this issue in the Superior Court, and the judge did not address it in her decision. Had the State police challenged Baker's

8

failure to identify a legal claim in connection with his allegations of constructive discharge, Baker could have rectified that omission in an amended complaint.  See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974).

As we explained in Kelleher, "[a]n employee does not have a right not to be 'constructively' discharged."  Kelleher, 98 Mass. App. Ct. at 51.  Rather, constructive discharge is "a doctrine used to prove an element of a wrongful discharge claim -- that is, that the employee was in fact discharged, rather than left voluntarily."  Id. at 52.  In other words, the employee must have some right not to be discharged that arises from the common law, a contract, public policy, or a statute. Id. at 51-52.  Whether, or on what basis, Baker had a right not to be discharged was not addressed below and has not been briefed by the parties.[2]

---

[2] We note that in his brief to this court, Baker asserted certain details not set forth in his complaint regarding Majenski's alleged "condemnation" and "mockery" after Baker investigated an accident in which a police cruiser operated by a commissioned officer struck a pedestrian.  In GTE Prods. Corp., a case cited by Baker both in the Superior Court and here, the Supreme Judicial Court discussed constructive discharge in the context of a common-law claim for wrongful discharge.  Under that cause of action, an at-will employee may sue a former employer if he or she was discharged in violation of a clearly defined public policy.  GTE Prods. Corp., 421 Mass. at 26.  See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-150 (1989) ("Redress is available for employees who are terminated for asserting a legally guaranteed right [e.g., filing workers' compensation claim], for doing what

If Baker intends to assert a claim for wrongful discharge, in the context of his constructive discharge, separate from his claim for retaliation under G. L. c. 151B, § 4, or the other claims listed in his complaint, he should move to file in the Superior Court an amended complaint setting forth that claim and the factual basis for it.  See Iannacchino, 451 Mass. at 636 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions," and factual allegations in complaint "must be enough to raise a right to relief above the speculative level" [citation omitted]).  We express no opinion on whether any claim for wrongful discharge would be viable in the circumstances here.

Conclusion.  So much of the judgment as dismissed Baker's

---

the law terminated for asserting a legally guaranteed right [e.g., filing workers' compensation claim], for doing what the law requires [e.g., serving on a jury], or for refusing to do that which the law forbids [e.g., committing perjury]").

10

claims for retaliation and constructive discharge is reversed. The remainder of the judgment is affirmed.

<u>So ordered</u>.

By the Court (Blake, C.J.,
  Hodgens & Toone, JJ.[3]),

Clerk

Entered:  May 2, 2025.

---

[3] The panelists are listed in order of seniority.