SUPREME JUDICIAL COURT 
 
 KENNETH BRESLER vs. LYNN MUSTER & others[1]

 
 Docket:
 SJC-13576
 
 
 Dates:
 February 10, 2025 - May 29, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, & Georges, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Unlawful Interference. Malice. Employment, Termination. Immunity from suit. Appeals Court. Practice, Civil, Motion to dismiss.
 
 

       Civil action commenced in the Superior
Court Department on January 19, 2023.
      A motion to dismiss was heard by Debra A.
Squires-Lee, J., and entry of separate and final judgment was ordered by her.
      The Supreme Judicial Court granted an
application for direct appellate review.
      Kenneth Bresler, pro se.
      Aaron R. White for Lynn Muster.
      Jeffrey T. Collins (Daniel R. Fishman also
present) for Mary Bowe & another.
      GEORGES, J.  In 2023, the plaintiff, Kenneth Bresler, a
former Appeals Court staff attorney, commenced suit in the Superior Court,
asserting a claim of intentional interference with advantageous relations
against three Appeals Court employees -- defendants Lynn Muster, Mary Bowe, and
Gina DeRossi -- in their individual capacities. 
Bresler alleged that the defendants engaged in a concerted campaign that
ultimately led to his termination.
      The defendants moved to dismiss, pursuant
to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), arguing that
the complaint failed to state a claim upon which relief could be granted.  Specifically, they contended that Bresler did
not plead sufficient facts to establish the "actual malice" element
required for an intentional interference claim. 
They further asserted that, as public officials, they were entitled to
common-law immunity because the complaint lacked allegations demonstrating that
they "acted in bad faith or with malice."  Nelson v. Salem State College, 446 Mass. 525,
538 (2006).
      A Superior Court judge granted the motion
to dismiss as to Bowe and DeRossi, but denied it as to Muster.  Following the entry of final judgment for
Bowe and DeRossi, Bresler appealed. 
Muster filed a cross appeal from the partial denial of her motion to
dismiss under the doctrine of present execution.[2]
      This court granted Bresler's application
for direct appellate review.  On appeal,
the defendants renew their arguments regarding the insufficiency of the
"actual malice" allegations and their entitlement to common-law
immunity.[3]
      For the reasons set forth below, we
conclude that the allegations in the complaint, when taken as true, along with
the reasonable inferences in Bresler's favor, plausibly suggest Muster and Bowe
acted with "actual malice," as necessary to state an intentional
interference claim and, by extension, also acted with "bad faith" or
"malice," as necessary to overcome their claim of common-law
immunity.  As to DeRossi, however, we
hold that the complaint does not contain factual allegations adequate either to
establish the "actual malice" element of the tort or to defeat her immunity.  Accordingly, we affirm the judge's order as
to Muster and DeRossi and reverse as to Bowe.
      Background.  1. 
Factual allegations.  We summarize
the factual allegations set forth in the complaint, accepting them as true and
drawing all reasonable inferences in the plaintiff's favor.  Curtis v. Herb Chambers I-95, Inc., 458 Mass.
674, 676 (2011).
      Bresler, a former trial and appellate
prosecutor and legal educator, began his employment with the Appeals Court in
January 2019 as a staff attorney.  At
that time, staff attorneys were divided into three categories:  (1) writers, who wrote drafts of judicial
opinions; (2) editors, who edited drafts of decisions, ensuring compliance with
the court's style manual; and (3) screeners, who prepared brief memoranda
recommending whether cases should receive oral argument.  Although Bresler was hired as a writer, the
court soon consolidated all staff attorney duties, requiring each attorney to
perform all three roles.
      In addressing the newly assigned editing
responsibilities, Chief Staff Attorney Mary Bowe remarked that "[i]t takes
a long time to learn these conventions." 
Regarding screening memoranda, she instructed staff attorneys to
"just make your best effort" and not to be concerned with formatting,
as the court was considering whether to eliminate the practice of drafting
these memoranda altogether.
      Shortly after Bresler's arrival, fellow
staff attorney Lynn Muster became hostile toward him.  Colleagues perceived her behavior as
motivated by jealousy of Bresler's background as a legal writer and
teacher.  In June 2019, after it was
announced that Bresler would teach a legal writing seminar for the Social Law
Library, another staff attorney overheard Muster accuse him of "trying to
take over."  The following month,
Muster was promoted to deputy chief staff attorney.  Thereafter, she began conveying criticisms of
Bresler's writing to judges, staff attorneys, Bowe, and the Appeals Court
administrator, Gina DeRossi.  Muster also
solicited negative feedback from two judges with whom she had personal
relationships, including attending law school together.  One staff attorney overheard Muster mocking
Bresler in the company of one of the judges, even though he had never drafted
an opinion for that judge.  Muster
further attempted to restrict staff attorney attendance at Bresler's writing
seminar and failed to promote it internally.
      In June 2019, prior to Muster's promotion,
Bowe provided Bresler with a positive written evaluation, stating:
"Ken has
been with the court for less than [six] months, but so far has performed his
duties (limited to writing at this time) very well.  The judges for whom he has done work have
commented that his writing is 'excellent' and his analysis 'thorough.'
. . .  Ken has brought a great
deal of energy and enthusiasm to the office and is a positive influence on
staff attorney morale. . . . 
[He] generates a professional image for the Appeals Court.  Most recently, he has planned a writing
seminar for the Social Law Library's continuing legal education program."
When Muster was
promoted in July 2019, Bresler expressed concern to Bowe about Muster's
"personal hostility" toward him and requested protection.  Bowe assured Bresler that Muster would not be
involved in evaluating his performance.
      In October 2019, four days before
Bresler's nine-month probation was set to expire, he was summoned to a meeting
with Bowe and Muster.  At that meeting,
Bowe told Bresler his writing was "deficient," falsely claiming that
a judge had found one of his drafts "unusable."  As a result, Bowe extended Bresler's
probation by six months and assigned Muster to supervise his editing –- marking
the first time the Appeals Court had denied a staff attorney permanent
employment.  Soon afterward, a staff
attorney serving as union steward reported to Bowe that Muster was bullying
Bresler, had been "brutal" in her editorial reviews, and was
subjecting him to scrutiny "no one could survive."  Bowe took no corrective action.
      In December 2019, Bowe told Bresler that
his future at the court "would not depend on his editing."  One month later, she informed him that his
annual pay increase would be withheld during his probationary period.  In February 2020, Bowe, joined by Muster,
gave Bresler an unfavorable oral evaluation and remarked that he was
"unlikely to last as a [s]taff [a]ttorney."  Following this meeting, Bresler began
experiencing anxiety, depression, and sleep disturbances.
      In June 2020, Bowe gave Bresler a written
evaluation, again in Muster's presence. 
She criticized his writing, discontinued his writing assignments, and
instructed him to stop teaching at the Social Law Library.  The evaluation exacerbated Bresler's mental
health struggles.  Bowe also began
assigning criminal law opinions to a less experienced staff attorney and
omitted from her evaluation of Bresler several positive assessments of
Bresler's editing from judges -- assessments Bresler had forwarded to her.
      In November 2020, DeRossi placed Bresler
on administrative leave and sent him a letter outlining thirteen allegations
against him, supplied by Bowe and Muster. 
Five of these had never been previously raised.  Among the allegations were several previously
repeated, exaggerated, and trivial claims: 
that Bresler had "misstated the standard of review" in an
assignment; misidentified the number of indictments in a draft opinion; and
submitted a draft opinion deemed "unusable" by a judge, even though
the judge had expressly stated that the reassignment of that opinion to another
employee was not due to Bresler's writing.[4] 
Although Bresler's errors were minor and "comparable to those made
by other [s]taff [a]ttorneys, judges, law clerks, and Defendant Muster,"
he was held to a uniquely high standard. 
For example, a 2020 opinion containing multiple misspellings, including
party names, resulted in no disciplinary action against its author.
      To respond to the allegations, Bresler
requested access to his "files." 
In December 2020, DeRossi -- who "was not familiar with the
allegations" and "needed to consult with Defendants Bowe, Muster, or
both" -- denied the request, though she did provide partial information,
failing to address all of Bresler's questions. 
Bresler submitted a letter refuting the allegations, but DeRossi
terminated his employment later that month at a meeting attended by Bowe.  The termination deepened Bresler's mental
health struggles.  Afterward, Bowe
confided to another staff attorney that the campaign against Bresler "had
taken on a life of its own."
      2. 
Procedural history.  Following a
hearing on the defendants' motion to dismiss Bresler's complaint, a Superior
Court judge allowed the motion as to Bowe and DeRossi, finding that the
complaint did not plausibly allege actual malice or overcome the presumption
that they acted with honest and sufficient motives.  However, the judge denied the motion as to
Muster, concluding that the complaint alleged sufficient facts to proceed on
both issues.  After final judgment
entered for Bowe and DeRossi, both Bresler and Muster appealed.  This court granted Bresler's application for
direct appellate review.
      Discussion.  1. 
Standard of review.  "We
review the allowance of a motion to dismiss de novo."  Curtis, 458 Mass. at 676.  To withstand dismissal under Mass. R. Civ. P.
12 (b) (6), a complaint must allege facts that "raise a right to
relief above the speculative level" (citation omitted).  Iannacchino v. Ford Motor Co., 451 Mass. 623,
636 (2008).  At the pleading stage, the
allegations must "plausibly suggest[] . . . an entitlement to
relief" (quotation and citation omitted). 
Id.
      2. 
Intentional interference with advantageous relations.  To state a claim for intentional interference
with advantageous relations, a plaintiff must plead sufficient facts to establish:
"(1) he had
an advantageous relationship with a third party . . . ; (2) the
defendant knowingly induced a breaking of the relationship; (3) the defendant's
interference with the relationship, in addition to being intentional, was
improper in motive or means; and (4) the plaintiff was harmed by the
defendant's actions."
Blackstone v.
Cashman, 448 Mass. 255, 260 (2007).  As
to the third element -- improper motive or means -- where, as here, an employee
alleges that individual officials of his employer interfered with his
employment relationship, the plaintiff must show that "actual malice"
was the controlling factor in the alleged interference (quotation
omitted).  Weber v. Community Teamwork,
Inc., 434 Mass. 761, 781-782 (2001), quoting Gram v. Liberty Mut. Ins. Co., 384
Mass. 659, 664 (1981), S.C., 391 Mass. 333 (1984).  See Blackstone, supra at 270 ("when the
defendant is a corporate official, the improper motive or means element should
be formulated as whether the controlling factor in the defendant's interference
was actual malice").[5] 
"Actual malice" is defined as "a spiteful, malignant
purpose, unrelated to the legitimate corporate interest."  Id. at 261, quoting Wright v. Shriners Hosp.
for Crippled Children, 412 Mass. 469, 476 (1992).
      In this case, the only element in dispute
is whether the defendants acted with "actual malice."  Bresler contends the allegations in the
complaint are adequate as to all three defendants.  The defendants disagree.  We therefore examine the allegations as to each
defendant in turn.
      a. 
Muster.  The allegations in the
complaint, taken as true, plausibly suggest that "actual malice" was
the controlling factor in Muster's conduct. 
Specifically, it is reasonably inferable that Muster acted with a
spiteful, malignant purpose unrelated to any legitimate interest of the Appeals
Court -- namely, to alienate Bresler from his superiors and peers out of
resentment for his professional success. 
See O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 687-690
(1996) (jury were warranted in finding supervisor's conduct prompted by
resentment of plaintiff's success constituted "actual malice").  See also Falcon v. Leger, 62 Mass. App. Ct.
352, 362 (2004) ("In some circumstances, malice may be demonstrated by
evidence of the defendant's unjustified personal vendetta or ill will exceeding
personal dislike of the employee").
      This improper motive is sufficiently
supported by allegations that (i) other staff attorneys believed Muster was
jealous of Bresler; (ii) Muster accused Bresler of attempting to "take
over"; (iii) she solicited criticism of Bresler from judges and encouraged
them to report those criticisms to Bowe; (iv) she ridiculed Bresler and
belittled his writing to judges, Bowe, DeRossi, and other staff attorneys; (v)
she discouraged attendance at Bresler's seminars and failed to publicize them;
(vi) a union steward reported that Muster was "brutal" in her review
of Bresler's editing and subjected him to unfair scrutiny; (vii) Bresler's
performance evaluations declined sharply after Muster became deputy chief staff
attorney and began attending his performance meetings, supporting an inference
that Muster contributed to that decline; and (viii) Muster provided at least
some of the false or trivial allegations used by DeRossi as grounds for
Bresler's termination.
      Courts have found similar conduct
sufficient to establish actual malice. 
See O'Brien, 422 Mass. at 687–690 (evidence of open hostility, yelling,
and name-calling in front of coworkers supported finding of malice); Clement v.
Rev-Lyn Contr. Co., 40 Mass. App. Ct. 322, 325 (1996) (supervisor's baseless
public slandering of employee supported finding of malignant purpose).
      Moreover, the allegations support an
inference that Muster's conduct served no legitimate purpose of the Appeals
Court.  See Kelleher v. Lowell Gen.
Hosp., 98 Mass. App. Ct. 49, 55-56 (2020). 
Muster's hostility toward Bresler allegedly predated her promotion and
her involvement in his supervision.  Her
concerns and criticisms, as his peer, about his participation in writing and
other seminars were not in any way within her responsibilities and provide a
basis for concluding that she was motivated by personal jealousy and
hostility.  Also prior to Muster's
promotion, Bresler had received a highly favorable performance evaluation.  Only after Muster's elevation did he begin
receiving negative evaluations, further supporting the inference that her
actions were without basis and fueled by personal animus, not the Appeals
Court's interests.
      Accordingly, drawing all reasonable
inferences in the plaintiff's favor, Curtis, 458 Mass. at 676, the complaint
states a viable claim for intentional interference with advantageous relations
as to Muster.[6]
      b. 
Bowe.  We disagree with the
judge's determination that Bresler's complaint failed to plausibly suggest that
"actual malice" was the controlling factor for Bowe's conduct.  In her initial June 2019 evaluation, Bowe
praised Bresler's performance, stating that he had "so far . . .
performed his duties . . . very well," received positive
feedback from judges, "brought a great deal of energy and enthusiasm to
the office," and was a "positive influence on staff attorney
morale" who "generate[d] a professional image for the Appeals Court."
      Yet, following Muster's promotion,
Bresler's complaint describes a marked and troubling shift in Bowe's conduct.
Specifically, Bowe (i) reneged on her promise to protect Bresler from Muster by
assigning Muster to supervise his editing and allowing Muster to attend his
performance meetings; (ii) issued three negative evaluations between October
2019 and June 2020 -- the first of which came just months after her glowing
review -- and falsely attributed certain mistakes to him; (iii) extended his probation
for six months, the first time the Appeals Court had done so, and denied him
his scheduled salary increase during that period; (iv) failed to act after
being informed by the union steward that Muster was bullying Bresler and
subjecting him to impossible scrutiny; (v) reversed course on her prior praise
of Bresler's teaching at the Social Law Library by directing him to stop; (vi)
assigned substantive work to less experienced attorneys over him; (vii) omitted
numerous positive evaluations of Bresler's work from his reviews; (viii) held
him to a stricter standard than others who committed similar errors; and (ix)
participated in the submission of false or trivial allegations to DeRossi to
justify Bresler's termination -- despite knowing, at least in some instances
(e.g., the computer synchronization issue), that Bresler bore no fault.
      Moreover, Bowe admitted to another staff
attorney that there was a "campaign" against Bresler -- apparently
initiated by Muster -- which had "taken on a life of its own."  This admission supports an inference that
Bowe knowingly furthered a campaign separate and apart from any legitimate
interest of the Appeals Court.
      From these facts, it is reasonable to
infer that Bowe's conduct was not merely negligent or misguided, but driven by
actual malice.  See Gram, 384 Mass. at
664 ("There might be sufficient proof that spite or ill will was the
controlling factor . . . derived from a rational inference of
probabilities from established facts" [quotation and citation omitted]);
Mailhiot v. Liberty Bank & Trust Co., 24 Mass. App. Ct. 525, 527 (1987)
(fabricated allegations supported inference of malice).  That is, when taking the allegations as true,
it can be inferred that Bowe, like Muster, acted out of a spiteful, malignant
purpose wholly unrelated to the court's legitimate interests.  See Kelleher, 98 Mass. App. Ct. at 55.  Her pattern of exaggerating performance
issues, ignoring reports of harassment, reneging on protective assurances,
omitting favorable evaluations, and reassigning his work to less experienced
colleagues all indicate that her actions were not motivated by concerns about
the "quality or usefulness" of Bresler's work, but by personal
animus.  Contrast id. at 55–56 (no
inference of malice where employer's actions reflected legitimate corporate
interest).  See O'Brien, 422 Mass. at
687–689 (jury could find actual malice where supervisor denied plaintiff work,
reassigned projects, and sharply shifted evaluative tone).
      We therefore conclude that Bresler's complaint
states a viable claim for intentional interference with advantageous relations
as to Bowe.[7]
      c. 
DeRossi.  We agree with the
judge's conclusion that Bresler's complaint fails to allege sufficient facts to
establish that "actual malice" was the controlling factor behind
DeRossi's conduct.  The allegations
concerning DeRossi are too limited to plausibly support Bresler's claim that
she was induced to participate in the alleged campaign against him.  Specifically, the complaint alleges that
DeRossi (i) sent a letter to Bresler listing thirteen performance deficiencies
provided by Bowe and Muster; (ii) failed to give Bresler an opportunity to
understand or respond to those deficiencies; (iii) did not investigate the
deficiency claims herself; and (iv) terminated Bresler for errors, "either
knowing that some of them were false or with reckless disregard for their
falsity."
      The complaint does not plausibly suggest
that DeRossi acted with "actual malice" as the controlling
factor.  As the court held in Weber, 434
Mass. at 783, a supervisor's termination of an employee and failure to explain
the reasons may reflect poor management but does not, without more, establish
actual malice.  The conduct must rise to
the level of unjustified personal hostility or ill will "exceeding
personal dislike."  Falcon, 62 Mass.
App. Ct. at 362.  At most, the allegation
that DeRossi, as the court administrator, failed to investigate the charges
prepared by high-level managers suggests mismanagement, not malice.  See Gram, 384 Mass. at 665 (inadequate
investigation insufficient to show malice). 
See also Psy-Ed Corp. v. Klein, 459 Mass. 697, 718–719 (2011) (board of
director's "ill[‑]considered" actions insufficient to establish
vengeful campaign).
      Bresler compares this case to Mailhiot, 24
Mass. App. Ct. at 527, where the court held that a jury could infer actual
malice from a defendant's fabrication of charges.  But here, Bresler does not allege that
DeRossi fabricated charges -- only that she conveyed performance deficiencies
originating from Bowe and Muster. 
Moreover, DeRossi necessarily relied on Bowe and Muster for information
regarding Bresler's performance, as she lacked independent knowledge of the
underlying events.
      Ultimately, DeRossi's alleged conduct is
distinguishable from Bowe and Muster's conduct. 
While Bresler provides factual allegations from which one could infer
that Bowe and Muster acted with a "spiteful, malignant purpose," his
claim that DeRossi was similarly motivated rests solely on conclusory
assertions, devoid of factual support, which must be disregarded (citation
omitted).  See Anzalone v. Administrative
Office of the Trial Court, 457 Mass. 647, 660–661 (2010) (disregarding
"talismanic" use of labels like "unconscionable" and
"wrongful interference" as insufficient to plead malice).
      Accordingly, the complaint does not state
a viable claim for intentional interference with advantageous relations as to
DeRossi.[8]
      3. 
Common-law immunity.  The
defendants assert that Bresler's claims are barred by common-law immunity.  Bresler counters that none of the defendants
is entitled to such immunity because each acted in bad faith and with malice.
      Under the doctrine of common-law immunity,
a public official exercising judgment and discretion is not liable for
negligence or other errors during official decision-making, provided the
official acted in good faith, without malice, and free of corruption.  Nelson, 446 Mass. at 537.  This doctrine protects public employees from
both suit and liability, reflecting the presumption that public officials act
honestly and in the public interest.  See
South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. 57, 69
(2002); Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield, 401
Mass. 26, 34 n.9 (1987), cert. denied sub nom. Forastiere v. Breault, 485 U.S.
906 (1988).
      To overcome this presumption, the
plaintiff bears the burden of showing that the officials acted in bad faith or
with malice.  Maxwell v. AIG Dom. Claims,
Inc., 460 Mass. 91, 104-105 (2011).  See
Nelson, 446 Mass. at 538.  "Bad
faith" is more than "bad judgment or negligence," but rather
"suggest[s] a dishonest purpose or some moral obliquity, a conscious doing
of wrong, or a breach of a known duty through some motive of interest or ill
will" (quotations and citation omitted). 
Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 25–26
(2018).  "Malice" constitutes
"a wrongful act, done intentionally, without just cause or
excuse."  Pino v. Trans-Atlantic
Marine, Inc., 358 Mass. 498, 504 (1970), quoting McGurk v. Cronenwett, 199
Mass. 457, 462 (1908).
      Because Bresler alleged facts plausibly
suggesting that "actual malice" was the controlling factor in the
actions of Muster and Bowe, neither defendant is entitled to common-law
immunity.  See Cachopa v. Stoughton, 72
Mass. App. Ct. 657, 665 (2008) (actual malice sufficient to support intentional
interference claim also defeats common-law immunity).  In other words, Bresler's complaint supports
the inference that both defendants "acted in bad faith or with
malice," thus precluding the protection of immunity.  Nelson, 446 Mass. at 538.[9]
      However, as previously noted, the
allegations concerning DeRossi are too attenuated to plausibly suggest that she
acted with "actual malice" toward Bresler or knowingly participated
in the alleged campaign by Muster and Bowe. 
While the complaint may describe conduct that reflects poor judgment or
negligence, such conduct does not rise to the level of "bad faith" or
"malice."  See Buffalo-Water 1,
LLC, 481 Mass. at 25–26.  Accordingly,
Bresler has not met his burden to overcome the presumption of common-law
immunity as to DeRossi.  See Nelson, 446
Mass. at 538 (common-law immunity shields public employees absent showing that
they acted in bad faith or with malice).
      Conclusion.  For the foregoing reasons, we hold that
Bresler has alleged sufficient facts to establish the element of "actual
malice" as to defendants Muster and Bowe, thereby stating a viable claim
for intentional interference with advantageous relations.  These same allegations are sufficient to
defeat their entitlement to common-law immunity.  In contrast, as to DeRossi, the complaint
fails to allege facts sufficient to establish either "actual malice"
or that she acted "in bad faith or with malice."  DeRossi is therefore entitled to
immunity.  Accordingly, we affirm the
judge's order as to Muster and DeRossi, and we reverse as to Bowe.
So ordered.

footnotes

[1] Mary Bowe and
Gina DeRossi.

[2] Bresler
concedes that pursuant to the doctrine of present execution, Muster's
interlocutory appeal is proper as to the issue of her immunity from suit, but
he asserts that this court should not consider Muster's argument pertaining to
the "actual malice" element of the intentional interference
claim.  While it is true that the denial
of a motion to dismiss is typically not appealable, Fabre v. Walton, 436 Mass.
517, 521 (2002), S.C., 441 Mass. 9 (2004), in this case, "there is already
one question properly before the court that must be decided in any event,"
and the actual malice issue "is fully developed in the record, extensively
argued by the parties, and certain to reappear in later stages" of
litigation, Maxwell v. AIG Dom. Claims, Inc., 460 Mass. 91, 99 (2011).  Additionally, as discussed further below, the
question of Muster's actual malice for purposes of the intentional interference
claim and the question of her malice for purposes of common-law immunity are "intertwined."  Estate of Moulton v. Puopolo, 467 Mass. 478,
491 n.18 (2014).  Thus, under the unique
circumstances of this case, we choose to consider Muster's appeal as it
pertains to the actual malice element of Bresler's intentional interference
claim.

[3] Bowe and
DeRossi also contend that Bresler's claim is barred by the exclusivity
provision of the workers' compensation act, G. L. c. 152,
§ 24.  However, their argument
solely references the "reasons outlined within their motion to dismiss,
which are incorporated herein."  Such
a bare reference does not rise to the level of appellate argument under Mass.
R. A. P. 16, as appearing in 481 Mass. 1628 (2019).  See Wellfleet v. Glaze, 403 Mass. 79, 80 n.2
(1988); Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 376
n.2 (1985).  Moreover, allowing parties
to incorporate lower court arguments by reference would undermine the page
limits for briefs specified in Mass. R. A. P. 20, as appearing in 481 Mass.
1646 (2019).

[4] Other
allegations included the following:  (1)
failing to implement a judge's requested change due to a computer
"synchroniz[ation]" issue; (2) entering an incorrect docket number,
though this was another employee's error; (3) submitting allegedly subpar
screening memoranda without explanation of any deficiencies; (4) editing a
"snapper" (the statement of disposition at the end of a decision) in
early 2020 to state "Judgment" rather than "Judgments,"
which Bresler corrected when notified; (5) omitting a judge's single change to
a decision, where that same judge had praised Bresler's work on the decision;
(6) including a phrase in a draft, two months into his employment, that one
judge endorsed but with which another panelist disagreed; and (7) making
allegedly "overbroad and unsupported statements" in two decisions --
a claim that was unfounded.

[5] "The
actual malice requirement provides a measure of protection to corporate
supervisors, who must necessarily make adverse employment decisions from time
to time and who otherwise would be unduly exposed to the tortious interference
claims of disgruntled former employees." 
Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 54–55 (2020).

[6] Muster
contends that the allegations concerning her conduct are "substantially
less egregious than the conduct that this Court found insufficient to support
liability in Gram."  But this case
is readily distinguishable.  Taken as
true, Muster's alleged conduct plausibly suggests more than mere negligence or
sloppy business practices.  See Gram, 384
Mass. at 665.  Rather, it supports an
inference of an "unjustified personal vendetta or ill will exceeding
personal dislike."  Falcon, 62 Mass.
App. Ct. at 362.
      Muster further argues that allegations
characterizing her as "spiteful" are vague and conclusory.  While some allegations in the complaint are
indeed conclusory and need not be accepted, see Iannacchino, 451 Mass. at 633
("we do not accept legal conclusions cast in the form of factual allegations"
[citation omitted]), the complaint as a whole alleges sufficient facts to
survive dismissal, see Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591,
609 (2017).
      For example, Bresler alleges that a
November 2020 letter cited thirteen fabricated or exaggerated performance
deficiencies -- some of which were allegedly supplied by Muster.  These are specific and factually
detailed.  It is reasonable to infer that
Muster's broader treatment of Bresler, beyond what is documented in that
letter, was consistent with those alleged instances.  Such inferences, viewed in conjunction with
the complaint's detailed allegations, are sufficient to support a plausible
claim, especially given that actual malice need not be proved by direct
evidence but may be derived from rational inferences from the facts.  Gram, 384 Mass. at 664.

[7] Bowe, like
Muster, contends that the allegations in Bresler's complaint are conclusory –-
an argument that, as previously noted, is unavailing.  See note 6, supra.  She further characterizes Bresler as a
struggling employee with documented performance deficiencies.  This characterization, however, fails to
credit the well-pleaded allegations and to draw all reasonable inferences in
Bresler's favor —- specifically, that either he had no performance issues or
such issues were unjustifiably exaggerated. 
See Curtis, 458 Mass. at 676. 
Bowe also asserts that she lacked any apparent motive to join in
Muster's alleged "vendetta." 
Yet, Bresler alleges that Bowe ignored his request for protection from
Muster and knowingly relied on suspect information in evaluating his
performance.  These allegations plausibly
support the inference that Bowe acted with "a spiteful, malignant
purpose" (citation omitted). 
Blackstone, 448 Mass. at 261.

[8] Bresler's
complaint further alleges that a consultant retained to conduct an independent
assessment of the Appeals Court's work environment recommended "bar[ring]
Muster and DeRossi from working together because they were intriguing against
staff attorneys," and that this recommendation "evidences DeRossi's
participation in Muster's campaign against Bresler."  This isolated allegation, however, is vague,
unsupported, and conclusory.  The
complaint does not identify the staff attorneys who were allegedly targets,
describe the nature of the purported "intriguing," or otherwise
provide any factual detail to support the claimed conspiracy.  Absent such specifics, the allegation fails
to raise more than a speculative right to relief.  See Anzalone, 457 Mass. at 660-661.

[9] Substantively,
the standards for "actual malice" and "malice" are
similar.  "Actual malice"
requires that the defendant acted with "a spiteful, malignant purpose,
unrelated to the legitimate corporate interest" (citation omitted).  Blackstone, 448 Mass. at 261.  "Malice," by contrast, is defined as
a "wrongful act, done intentionally, without just cause or excuse"
(citation omitted).  Pino, 358 Mass. at
504.  The distinction lies in
degree.  "Actual malice" is a
"heightened" standard:  when
applied, courts conduct a unified analysis of the defendant's conduct, treating
"improper motive" and "improper means" as subsumed within
the more demanding framework of "actual malice."  Blackstone, supra at 269.  Accordingly, a finding of "actual
malice" necessarily encompasses and resolves the question whether the
defendant acted with ordinary "malice."